MUMFORD et al., Appellants, v. ROOD, Respondent.

(153 N. W. 921.)

(File No. 3659. Opinion filed August 7, 1915.)

1. **Appeals—Record—Assignments of Error, as Basis of Appellate Jurisdiction—Specifications of Error, Necessity of in Record—Use of Specifications.**

The jurisdiction of the Supreme Court rests upon assign-

ments of error, and appellant's brief should clearly point out assignments of error relied on, which should be set out as "Assignments of Error;" but, while not absolutely essential that the brief contain specifications of error, they may become so in order to preserve a proper appeal record, their value resting simply in their forming a basis for assignments of error.

2.  **Appeals—Record—Review—Specifications, in Brief, as Assignments of Error—Non-Prejudice to Respondent—Reception of Assignments by Court—Rules and Statutes.**

Appellants' brief set out specifications of error contained in settled record; following which was trial judge's certificate settling the record; and under a following heading "Additional Assignment of Error" was an assignment assigning error in denial of motion for new trial. Held, that the word "additional" was in effect a declaration that other assignments of error preceded this one; and the brief sufficiently showed, to respondent, that appellants were treating, as assignments of error, the foregoing specifications of error; and while the brief fails to comply with Rule 5 of Supreme Court, and Laws 1913, Ch. 178, Sec. 3, and Laws 1913, Ch. 172, Sec. 1, relating to assignments of error and to specifications of error, yet, such failure not being misleading to respondent, the Supreme Court will consider the brief, although, upon timely motion made, appellants would have been required to clearly set out the assignments of error.

3.  **Guardian and Ward—Investment of Trust Funds—Bank Deposits—Order of Court Under Statute, Necessity for—Good Faith and Discretion Without Order, Resulting Liability—Finding, Conclusiveness of.**

Upon an appeal involving liability of a guardian for loss of funds deposited by him in a bank, held, that a finding that there was no evidence showing guardian did not procure county court order directing investment of funds as he did, is not conclusive as against the wards; that a guardian may, under Prob. Code, Sec. 407, procure the court's order authorizing and directing investments he shall make, which order, when complied with, protects him against any resulting loss from such investments, he being otherwise free from negligence; but, there being no statute requiring same, he is not bound to procure such order; and, if he acts honestly and faithfully and exercises sound discretion such as men of ordinary intelligence use in their own affairs, he is not liable for loss; while, if his investments are not such as he should have made, he can protect himself from liability only by showing he acted in accordance with an order of court.

4.    **Guardian and Ward—Invested Funds—Liability for Loss—Orders for Investments—Approval of Reports, as Ratification of Investment.**

A guardian, who invests trust funds by bank deposit without obtaining an order of court directing such investments, cannot escape liability for loss on the ground that, having presented annual reports disclosing the investments, the court, by approving the reports, thereby ratified his acts in making the investments; since the court, when considering such report, is not called upon to pass upon propriety of investments made.

5.    **Guardian and Ward—Liability for Loss of Invested Funds— Non-Questioning of Annual Reports, Effect of—Statutory Remedy of Wards, Necessity of Resort to.**

On final accounting of a guardian for distribution of trust funds, held, that the wards did not, by objecting to receipt of certain certificates of deposit of funds in bank, held by guardian, or by any other action taken by them upon the final hearing and petition for distribution, question the correctness of the guardian's several annual reports, but were there raising question of guardian's liability for loss of these funds under the facts shown in such reports; hence the guardian could not escape such liability on the ground that the only mode of attack of such reports, which had been approved by the court, was that prescribed by Prob. Code, Sec. 287, concerning conclusiveness of settlement and allowance of accounts involving estates.

6.    **Guardian and Ward—Liability for Loss of Trust Funds—Right to Deposit Funds in Bank—Continuance of Original Investment, as Defense—Presumption.**

While a trustee who receives a trust fund in form of a deposit or loan to a bank, may be justified, where he has no cause to doubt solvency of the bank, in letting the fund remain there temporarily, awaiting opportunities for better investments, held, that such justification cannot rest solely upon the ground that the fund came to trustee in such shape; and there is no presumption that the original investment in bank, made by the father of the wards, was intended as a permanent investment, if, as matter of fact, the investment is not one recognized by courts as proper.

7.    **Guardian and Ward—Management of Estate—Investments in Bank Deposits—Liability for Loss of Funds—Finding Favoring Bank Investments—Sufficiency of Evidence.**

On final accounting of a guardian for distribution of trust funds, held, that the evidence fails to sustain a finding that farm loans of such funds in the locality of guardian's residence are meager and of temporary character and have no ready sale or

market value, that the guardian, in depositing funds in a bank in that locality which afterwards became insolvent, exercised reasonable diligence in preserving and caring for such funds, and appeared to afford reasonable security in view of uncertain values of realty, that deposit in bank of good repute was as safe as if loaned on realty; that, on the contrary, a trustee, except under extraordinary circumstances, is not justified in loaning money to a bank, the security, if any, being merely personal; that the evidence fails to show the slightest diligence of guardian to loan on realty, or any active participation by him in handling the funds, same being left almost exclusively to his attorney; that for a year and a half before failure of the bank realty loans of ready sale, with good security, bearing nearly twice the interest the bank certificates bore, could have been procured in the county.

**8.** **Guardian and Ward—Liability for Loss of Funds—Application for Discharge, Diligence of Guardian, Necessity of Showing.**

A guardian, upon application for discharge from his trust, and from liability thereunder, must affirmatively show diligence in conserving his wards' interests, especially when asking to be exonerated from liability for losses from an investment of a class that should be made only under extraordinary circumstances, such as loans to or deposits in bank.

**9.** **Guardian and Ward—Management of Estate—Settlement and Distribution—Care of, and Home for Ward, Credit to Guardian for, Though Not Charged.**

Where a ward had his home for several years in his guardian's family, although the guardian never charged the ward anything for personal care and support given, held, that the guardian, on hearing on final report, should be credited with such sums as he may prove himself entitled to recover for such support furnished.

Appeal from Circuit Court, Meade County. Hon. Levi McGee, Judge.

In the Matter of the guardianship of the persons and estate of Edgar Mumford and Mabel Mumford. From a judgment, affirming an order of the county court approving, allowing, and settling the final account of Frank M. Rood, guardian, and directing a distribution by him of the property in his hands, Edgar Mumford and Mabel Mumford appeal.

*Null & Royhl,* for Appellants.

*Martin & Mason,* and *Philip & Waggoner,* for Respondent.

(1) Under point one of the opinion, Respondent cited: Sup. Ct. Rule 5.

(2) Under point two of the opinion, Respondent cited: Sup. Ct. Rule 5; Hepner v. Wheatley, 144 N. W. 924 (S. D.); Duprel v. Collins, 146 N. W. 594 (S. D.).

(3) Under point three of the opinion, Appellants cited: Murphy v. McCullough, 90 S. W. 69; Fidelity Company v. Butler, (Ga.) 16 L. R. A. (N. S.) 994; Guardianship of Ben Wood, (Cal.). 36 L. R. A. (N. S.) 252; Pom. Eq. Jur., Sec. 1070; Law's Estate, 144 Pa. 499, 14 L. R. A. 103, 22 Atl. 831; Sec. 407, Probate Code.

Respondent cited: Sec. 385, 395, Prob. Code; 21 Cyc. 88, 90-1; Re Grammel, 120 Mich. 487, 79 N. W. 706; Law's Estate, 144 Pa. 499, 14 L. R. A. 103, 22 Atl. 831; Jacobus v. Jacobus, 37 N. J. Eq. 17; Note 21 L. R. A. (N. S.) 399-400; Guthrie v. Wheeler, 51 Conn. 207.

(4) Under point four of the opinion, Appellants cited: Olson v. Thompson, 47 N. W. 20; 21 Cyc. 151, citing Woerner on Guardianship, Sec. 96; Schouler Domestic Relations, Sec. 372.

Respondent cited: Ormiston v. Olcott, 84 N. Y. 343; State ex rel. Collins v. Gooch, 97 N. C. 186, 2 Am. St. Rep. 284; Prob. Code, Sec. 407.

(6) Under point six of the opinion, Appellants cited: Corcoran v. Kostrometinoff, 21 L. R. A. (N. S.) 399, 91 C. C. A. 619.

Respondent cited: Note 7, L. R. A. (N. S.) 618; Moore v. Eure, 101 N. C. 11, 7 S. E. 471; Sheerin v. Public Administrator, 2 Redf. 421; Hanbests Appeal, 92 Pa. 482, 39 Cyc. 409, Note 14, L. R. A. 104.

(7) Under point seven of the opinion, Appellants cited: Corcoran v. Kostrametinoff, 21 L. R. A. (N. S.) 399; Laws Estate, 22 Atl. 831, 14 L. R. A. 103; Walker v. Walker, 42 Ga. 135; Baer's Appeal Pa. Case, reported in 4 L. R. A. 609; Brown, v. Campbell, 2 N. Y. Ch. L. 404; Gray v. Fox, 22 Am. Dec. 513; Nyces Estate, 40 Am. Dec. 489; Bispham, Eq. 130; Perry, Tr. 443.

WHITING, J. This matter is before us upon appeal from a judgment of the circuit court affirming an order of the county court, which said order approved, allowed, and settled the final account of a guardian and directed the distribution by the said

guardian of the property reported by him as in his hands and belinging to the estate of his wards.

[1, 2] Respondent contends that there is nothing before this court for its consideration because the only assignment of error in appellants' brief is one assigning as error the overruling of appellants' motion for new trial. This court had hoped that, after the publication of the opinion in Hepner v. Wheatley, 33 S. D. 34, 144 N. W. 924, the proper method of setting forth assignments of error in an appellant's brief would be so clearly established as to prevent any further questions arising in relation thereto; but it would seem that, regardless of the clearness and directness of the language used in said opinion, appellants' counsel have misunderstood the same or else have not had such opinion called to their attention. The jurisdiction of this court rests upon the assignments of error. It is therefore necessary that an appellant's brief point out clearly the assignments of error relied upon, and correct practice demands that such assignments be set out as "Assignments of Error"; but it is not absolutely essential that an appellant's brief contain the "Specifications of Error." While specifications of error may be absolutely essential in order to preserve a proper record for an appeal, yet their value rests simply in the fact that they form a basis upon which proper assignments of error may rest. Appellants, in their brief, have set forth the specifications of error contained in the settled record; following such specifications is the certificate of the trial judge settling the settled record; next, under the heading "Additional Assignment of Error," is found an assignment assigning as error the denial of the motion for new trial. The use of the word "additional" in the said heading amounts to a declaration that, somewhere in the preceding part of the brief, are to be found other assignments of error; and we think there could have been no doubt in the mind of respondent, as there certainly is not in the minds of the judges of this court, but that appellants' counsel were treating, as assignments of error, the foregoing specifications of error. While appellants' counsel have failed to prepare the brief in the manner pointed out by this court in its rules and in the opinion in Hepner v. Wheatley, supra, yet we do not feel that we would be justified in rejecting such brief, where the failure could not possibly be misleading to respondent's counsel, although, upon

motion timely made, we certainly would have required the appellants to clearly set forth in their brief those matters which they desire to assign as error in this court.

The questions presented upon this appeal all relate to certain certificates of deposit reported by the guardian as part of the assets of the estate, and which, upon the hearing of the guardian's final report, the county court directed should be set over to the wards. It appears that: Some time prior to the year 1901, appellants' father died leaving an estate consisting of real and personal property in this state, a material part of which estate was in the shape of certificates of deposit in a bank known as the Meade County Bank. Respondent was appointed administrator of said estate, and, as such administrator, he renewed the certificates of deposit. He afterwards, on May 18, 1901, duly qualified as the guardian of the minor heirs of the deceased, and among the property which came into his hands as such guardian were these certificates of deposit which he had held as administrator. The deposits, evidenced by such certificates, were some for four and the remainder for six months. It was the custom of the said guardian, as shown by annual reports presented to the county court, to renew the deposits upon the maturity of the certificates: the result being that the original amount, together with some additions made thereto from time to time, was kept upon deposit in said bank and represented by certificates of deposit up to December 26, 1911, when the said bank failed.

The guardian, from year to year during the period of his trusteeship, filed reports, which reports were accepted and approved. Each of such reports set forth, as a part of the assets in the hands of the guardian, the certificates of deposit then held by such trustee. A report for the year 1911 was presented and and approved soon after the failure of the said Meade County Bank. Another report was presented and approved in January, 1913, which last report showed cash dividends received from the certificates of deposit held by the guardian. After such January, 1913, report, the wards, who had then arrived at majority, demanded a final account and a distribution of property belonging to them. The guardian presented such an account which showed these certificates of deposit held by him. He asked to be allowed to turn these certificates over to the wards. The wards

objected to receiving same. The county court, and upon appeal the circuit court, granted the guardian's request; and it is from the judgment of the circuit court, allowing the guardian to turn over such certificates, and thus releasing him from personal liability for depositing the wards' funds in the bank, that this appeal is taken.

[3] The circuit court found that there was no evidence showing that the guardian did not procure of the county court an order directing him to invest the trust funds as he did. The respondent contends that appellants are concluded by this finding—that without evidence to the contrary it will be presumed that the guardian procured an order of the court if such an order was necessary. We cannot agree with such contention. A guardian may, under section 407, Prob. Code, procure from the county court an order authorizing and directing the investments that he shall make. If he procures such an order and complies therewith, he is fully protected thereby against any loss resulting from such investments where he is otherwise free from negligence. A guardian is not in duty bound to procure such an order where, as in this state, there is no statute requiring same, and, if he "acts honestly and faithfully and exercise a sound discretion such as men of ordinary prudence and intelligence use in their own affairs," he is not holden though loss occurs. 21 Cyc. 87-89; Pomeroy's Equity Jurisprudence, § 1070. Upon the other hand, if his investments are not such as he should have made, he can only protect himself from liability by showing that he was acting in accordance with an order of the court. Therefore the only time when proof of an order becomes essential is when it is offered by way of necessary defense, and, when it thus becomes essential, it is incumbent upon the guardian to prove same.

[4] Respondent contends that, by the approval of the several annual reports, the county court ratified the acts of the guardian in making such investments, and that by such ratification the guardian was absolved from all liability for loss exactly as he would have been if he had obtained a proper order in advance. We cannot agree with such contention. As before noted, a guardian is not required to procure such an order and he need do it only as a matter of protection. While the court, if it should consider the rights of the wards were in jeopardy, might, perhaps,

of its own motion, call the guardian to account and direct his future actions, yet, inasmuch as the guardian may assume all responsibility and is presumed to be doing so when no order has been procured, the county court is not called upon, when considering an annual report, to pass upon the propriety of the investments made as it would in case the guardian was seeking, through an order, to place the responsibility of selecting the class of investments upon the court and thus seeking to release himself from liability for future losses. If a guardian desires protection through any act of the court, he must procure an order in the manner provided by said section 407. Corcoran v. Kostrometinoff, 91 C. C. A. 619, 164 Fed. 685, 21 L. R. A. (N. S.) 399.

[5] Respondent contends that the remedy of the wards, if they desire to attack the annual reports which respondent had presented to, and which had been approved by, the county court, was prescribed by section 287, Prob. Code, and that such wards, upon the hearing of the final report and prayer for distribution of estate, could not question the correctness of these reports. In such contention respondent is clearly in error, because the wards did not, by objecting to the receipt of these certificates of deposit or by any other position taken by them upon the hearing of the final report and petition for distribution, attempt to question the correctness of the several annual reports. Instead of being in court questioning the correctness of the annual reports and seeking a rehearing upon same, the wards, upon the hearing of the final report and petition for distribution, were raising the question of the guardian's liability under the facts shown by the several annual reports.

[6] Finally, respondent contends that, even conceding that he did not procure an order authorizing the loaning of money on certificates of deposit, and conceding that the approval of the several annual reports did not amount to an approval and ratification of such loans, yet the lower court was right in its holding, for the reason: (1) That respondent was merely continuing the investment in the form in which it came into his hands; (2) that, under all the circumstances as found by the court, the investment was one which, as a careful and prudent business man, he was justified in making.

While a trustee, receiving a trust fund in the shape of a

deposit or loan to a bank, may be justified, where he has no cause to doubt the solvency of such bank, in letting the fund remain in such condition for a brief period awaiting opportunities for better investments, we cannot subscribe to the doctrine that such justification can be based solely upon the ground that the fund came to the trustee in such shape. A trustee, such as a guardian of property, is presumed to be appointed owing to his peculiar business qualification; his appointment is supposed to be based upon the confidence which the appointing power had in him; it is his business judgment and acumen that is sought. Moreover, for all this guardian may know, at least so far as any evidence shows, the loan made the bank by the father of these wards may have been for some merely temporary purpose with no thought or expectation of continuing the same indefinitely; and certainly there could be no presumption that such loan was intended as a permanent investment if, as a matter of fact, the investment is not one recognized by the courts as a proper investment to be made under ordinary circumstances. Even among those decisions that have upheld a trustee in continuing a loan to a bank upon the ground that the fund came to the trustee in that form, there will be found none where such investments were continued for any such a period of time as were those in this matter now before us; furthermore, in nearly or quite all the cases, it will be found that the continuance of such investments was upheld upon the ground that the investment was made "by the creator of the trust." A testator creates a trust by his will, and most of the cases upholding such continuance of loans are cases where executors have so continued loans. The trust reposed in a guardian is generally one not created by any other authority than the court. 39 Cyc. 409; Hanbest's Appeal, 92 Pa. 482; Estate of Law, 144 Pa. 499, 22 Atl. 831, 14 L. R. A. 103. Our attention has not be called to a case where such a continuance of loan to a bank by a guardian has been upheld upon the ground that the fund came into the guardian's hands in such shape.

[7, 8] The circuit court found:

"That the lands in Meade county and vicinity upon which loans might be had are situated in a semi-arid country, comparatively newley settled upon which improvements are generally slight and of more or less temporary character and which have no

ready sale or market value, excepting in 'boom' times. That three or four years ago there was such a boom, when a considerable amount of money was loaned upon such security, mostly to parties making final proof, but that the demand for such loans has rapidly fallen off; during the past two years there has been little sale therefor or activity therein. That the respondent has exercised, under the conditions of this country, reasonable diligence in preserving and caring for the assets of this estate, and that his continuance of investments thereof in the form in which they were originally made was such as appeared to afford reasonable security therefor, considering the uncertain value of most of the real estate in this country, the money of the heirs was as safe when deposited in a bank of good repute as if the same had been loaned on farms, payment of both principal and interest being slow and uncertain on real estate loans in Meade county and vicinity; and this court finds as a fact that the guardian in this case could hardly have been more cautious than he was."

The evidence showed that, up to its failure, the Meade County Bank was a bank of good repute. Appellants contend that the evidence was insufficient to sustain the above finding. They contend, and it is certainly the law, supported by the great weight of authority, that, except at least under extraordinary circumstances, a trustee is not justified in loaning money to a bank; the security, if any, being merely personal in its nature. Corcoran v. Kostrometinoff, supra, and notes both in 21 L. R. A. (N. S.) 399, and 91 C. C. A. 622; Murphy v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69; Estate of Law, supra. We agree with the appellants that the evidence fails to support the above finding. There is no evidence that the guardian used even the slightest diligence to find opportunities for loaning this money upon real estate security. In fact, the evidence fails to show any active participation by the guardian in the handling of these funds; the same being left almost exclusively to the care of his attorneys. The evidence conclusively shows that, for a period of at least a year and a half before the failure of the Meade County Bank, real estate loans, in small amounts with good security, could have been procured in the county where this fund was being held. The evidence shows that, while there were fewer loans made in 1911 than in 1910, the loans made met ready sale. The

evidence shows that such real estate loans could have been made to earn the fund nearly or quite twice the rate of interest which the certificates of deposit bore. The evidence failed to show that loans secured upon real estate in that and surrounding counties would be unsafe, provided such loans were of proper amounts. There is no evidence whatsoever to sustain the finding that the guardian "could hardly have been more cautious than he was," unless it be held that failure to exercise diligence in attempting to procure proper investments is proof of caution—while this is caution, it is a "caution" which courts cannot sanction. No claim is made that the guardian acted in other than perfect good faith—in fact, his motives are above suspicion. But infants are the special wards of the courts; guardians are appointed that their interests may be properly protected; and, unless a guardian proceeds under orders previously obtained, it is always incumbent upon him, when seeking to be discharged of his trust, and especially when asking to be exonerated from liability for losses resulting from an investment of a class that should only be made under extraordinary circumstances, to affirmatively show diligence in attempting to conserve the interests of his wards. Upon the trial in the circuit court, respondent made no attempt to show such diligence and failed to show any extraordinary conditions justifying his loans to the bank. It is quite possible that, upon a further trial, he may be able to affirmatively establish that the conditions were so extraordinary as to justify him in the course pursued. This court is not inclined to hold, as some courts do, that loans to banks are always at the trustee's risk; but we do hold that it is incumbent upon a guardian to justify such loans.

Appellants contend that the certificates of deposit did not designate the nature of the fund and the beneficiaries in a proper manner, and that, for that reason alone, respondent must be held personally liable for all funds loaned the bank. In view of the fact that this question might arise upon the further trial of this cause, we feel it our duty to announce now that we do not think this contention sound.

[9] From the evidence introduced it would appear that, for several years, one of the wards had his home in respondent's family, and that respondent had never charged such ward anything for the personal care and support given to him. We think

the ends of justice will be promoted, if, upon another trial of this cause in the lower court, respondent is allowed to amend his final report and is credited with such sums as he may prove himself entitled to recover on account of such support furnished his ward.

The judgment and order appealed from are reversed.