DYE, et al, Respondents, v. DODD, et al, Appellants.

(226 N. W. 565.)

(File No. 6436. Opinion filed August 3, 1929.)

Buell F. Jones, of Britton, Roy E. Willy, of Sioux Falls, T. B. Thorson, of Pierre, and Null & Royhl, of Huron, for Appellants.

Gardner & Churchill, of Huron, and Charles R. Hatch, of Wessington Springs, for Respondents.

BROWN, J. Plaintiffs in this action are children of defendant Florence Dodd and her deceased husband, whose name was Charles Dye. From his estate his widow and children inherited between $15,000 and $16,000 in money. The widow remarried, and her husband, James Dodd, lived on a farm in Jerald county with her and the minor children at the time of the transactions involved in this case, and during such time James Dodd did his banking business with Farmers' Savings Bank of Wessington Springs, of which S W. Wright was vice president and one of the active managing officers. The administration of Dye's estate seems to have been

had in Iowa, and defendant bank was very desirous of getting the money coming to Dye's widow and children into the bank, and its president, Charles Elliff, made one or more trips to Iowa in order to get this money. About the month of September, 1920, $7,000 of the amount was received by defendant bank, and in December of the same year $8,300 was received, which also was taken in charge by Mr. Elliff and deposited in the bank. The entire amount was deposited in a personal account of Florence Dodd, although prior to the receipt of any of it she had been appointed guardian for the children, all of whom were then minors. Florence Dodd seems to have left the care of the fund almost entirely to her husband. He was a farmer, and, as his testimony indicates, had not much familiarity with the handling of funds of this amount, so he left practically the entire management of the fund to the bank and its officers, trusting to them to see that the fund was managed and invested in a businesslike way. In March, 1921, Dale Wallace was owing the bank about $6,582, and, as a result of consultations between the bank officers and Dodd, his wife made a loan of $7,000 to Wallace, taking as security a mortgage on a section of land owned by Wallace. The $7,000 was taken from the funds in the bank procured from the Dye estate, and $6,582 of it was at once applied to the payment of Wallace's indebtedness to the bank. It is undisputed that $4,500 of the $7,000 belonged to the children Before the commencement of this action Forrest Dye had attained his majority and was appointed guardian ad litem for the other minors, and brings this action to recover the $4,500 with interest. On a trial to the court without a jury, decision and judgment were given in favor of plaintiffs, and against all of the defendants, and from the judgment and an order denying a new trial, defendants Wright, Farmers' Savings Bank, and the superintendent of banks, who had taken charge of the Farmers' Savings Bank on its insolvency, appeal. Florence Dodd does not appeal.

The negotiations for the making of the loan were largely conducted by defendant Wright. James Dodd testified that in January, 1921, he talked with Wright about investing this money, that Wright told him Wallace wanted to get a loan of $7,000 and would give a first mortgage on two quarter-sections of land and a second mortgage on three quarters, subject only to a mortgage of $6,500 to the state, that it was one of the finest ranches in the state, and

that the buildings and improvements on it were worth $12,000; that there were 300 acres broken and under cultivation, and it was all level, and every acre could be broken and cultivated. Dodd further testified that he first saw the land in 1923, and then found that the value of the improvements did not exceed $3,500 at the outside; that there were not more than 120 acres broken and not more than 200 acres in all could be broken, the rest of the land being all hills and rocks and good for nothing but pasture. Relying on Wright's representations, he agreed to make the loan and left to Wright the entire matter of seeing to the drawing up of the papers and having the title seen to and the mortgage recorded. Abstracts were neither procured nor examined, Wright saying that the state's loan of $6,500 would not have been made unless the title was then good, and that he knew Root and was satisfied that Root would not make a loan unless the title was good, and there was no need of getting further abstracts. Dodd acquiesced in this.

The note and mortgage were taken in the name of Florence Dodd individually, and seem to have been retailed in the possession of the bank, for Dodd testified that he did not see either of them until the latter part of November, 1923, after there had been considerable trouble over the loan. The Dodds had no acquaintance with the mortgagor, Wallace, and had never seen the land; it was some 25 miles from where they lived.

Wright denied making the representations as to the improvements and character and quality of the land, but concedes that the improvements were worth only about $3,000. When the loan was made there were not only the two mortgages, that to the state for $6,500 and that to Root for $2,500; but there was a mechanic's lien on the premises for somewhere between $800 and $900, and delinquent taxes aggregating over $300, and more than $1,300 delinquent interest on the Root mortgage, on which foreclosure by advertisement was commenced in May, 1922. James Dodd saw the foreclosure notice in the newspaper and at once called Wright on the phone to inquire about it. Wright replied that he could not tell him over the phone, and Dodd drove to Wessington Springs and interviewed Wright, who told him to go home and quit worrying and they would take care of it. The foreclosure was completed and the land sold, and James Dodd raised the necessary money to redeem. Wallace defaulted in the payment of interest on his mort-

gage, and it was foreclosed and the property bid in in the name of Florence Dodd for the amount due on the Wallace mortgage. No redemption was made, and she got a sheriff's deed to the land.

■ Appellants contend that the evidence is insufficient to justify the decision. They concede that the testimony shows "conclusively that they (the Dodds) intrusted the matter of this loan to Mr. Wright"; but they argue that Florence Dodd had the $7,000 to her credit in the bank and had a right to present a check and withdraw that amount, that the bank could not refuse to pay it to her, and therefore "the bank would not be liable in paying out this money on her direction unless it knew that she intended to misappropriate the fund and the bank participated in the business of misappropriating the fund." It is very generally held that second mortgages are not proper security for a loan by a guardian. 28 C. J. 1142. The bank not only knew that this loan would be a misappropriation of the minors' funds, but the bank suggested the loan, knew that it was not only a second mortgage loan, but must have known, if it gave any attention at all to the business that was intrusted to it, that the interest on one of the prior mortgages was hopelessly in default, that there were unpaid delinquent taxes on the land, that there was a mechanic's lien on it for a very considerable sum, and it must also have known that the borrower to whom the loan was being made was personally in financial straits, because he was indebted to the bank for a large sum which he evidently could not pay, for Wright testified: "I wanted to get the loan for Wallace so he could liquidate some of his indebtedness to the bank." In the light of this testimony, we certainly cannot say that there was not sufficient evidence to justify the finding of the trial court that the bank through fraud obtained trust funds belonging to plaintiffs. Wright's testimony shows that he was acting for the bank, that the bank got practically all of the money procured through the loan, and that both Wright and Elliff, the president of the bank, knew that a very large part of the $7,000 was the money of these wards. That the Dodds relied upon the bank, as well as upon the integrity of its officers, is shown by Dodd's testimony that during the time covered by the transaction he was a customer of the bank and did all his banking business there; that when the money was received from Iowa it did not come to the Dodds, but to the bank; and that all papers pertaining to the loan

were left with the bank. The business was not transacted with Wright alone as an individual. Before the loan was closed, there was a discussion about it, in which Mr. Wright, Mr. Elliff, James Dodd, the defendant Florence Dodd, and the county judge all took a part, and when trouble developed on account of the foreclosure of the Root mortgage and the discovery by Dodd of the mechanic's lien, Elliff, as well as Wright, was active in assuring Dodd that he need not worry: "We are behind you on this deal. We are going to take care of all that." We have no doubt that there was sufficient evidence to justify the decision of the court that Dodd relied both upon the bank and on its president and vice president, and believed, as they assured him, that the bank was behind him on the deal.

Appellants insist that there is a feature of the case which is decisive against respondents' right to sue, and that is there has been no accounting or settlement with the guardian. They say: "It is axiomatic that a ward cannot sue his guardian during the guardianship." And they quote from Gronna v. Goldammer, 26 N. D. 122, 143 N. W. 394, 398, Ann. Cas. 1916A, 165, as follows: "We are quite satisfied that in the case before us a cause of action had not accrued either as against the principal or his sureties, until there had been a 'settlement of the guardian's account in the probate court, and the amount due from him to the ward had been established and ascertained.'" This citation has no application whatever to the instant case. That was a suit on a guardian's bond which was conditioned that guardian "should well and truly account for and pass over the property and estate of said ward when and as it should become his duty so to do, and when and as he should be directed and ordered by the county court." While the general rule is as stated by appellants, it does not include all matters which may arise between the guardian and ward, nor does it exempt the guardian from every action at law. "The rule does not apply so as to preclude an action before an accounting has been had, where the claim in question does not involve any question of accounting, as where the action is simply one to recover for fraud and conspiracy." 28 C. J. 1246. There is no question of accounting involved in the present case. It is simply an action to recover money wrongfully taken from wards which the evidence shows was converted to the use of defendant bank.

It is finally contended that the wards ought not to recover and also be permitted to hold the land which was bid in on the foreclosure of the Wallace mortgage. It is sufficient answer to this to observe that this land was bid in not for the wards, but for Florence Dodd individually, a codefendant with appellants, and that the sheriff's deed was taken to her individually. What recourse, if any, appellants may have against the land or against their codefendant, Florence Dodd, is not before us on this appeal.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., not sitting.