In Re ZYLSTRA'S ESTATE.

SLAGTER, et al, Respondents, v. SMITH, Appellant.

(238 N. W. 159.)

(File No. 7006. Opinion filed October 5, 1931.)

*Roy E. Willy,* of Sioux Falls, for Appellant.
*Roscoe Satterlee,* of Mitchell, for Respondent.

RUDOLPH, J. This is an appeal from a judgment and order denying a motion for a new trial, wherein the trial court sustained objections interposed on behalf of the respondents to an account renderd by the appellant, their guardian.

The appellant, Smith, was appointed guardian of the persons and estates of the respondents on the 20th day of April, 1918. On the 22d day of May, 1918, he received as such guardian the sum of $1,440.51 for each of the respondents and the same amount for and on behalf of Klaas Zylstra, for whom he was also the guardian. In 1918 R. G. Zylstra, a brother of these respondents, had agreed to purchase a certain quarter section of land for a consideration of $10,400. A part of the consideration paid for the real estate was represented by a first mortgage on the premises, executed by R. G. Zylstra and his wife, and made payable to the prior owner. The balance of the purchase price was paid by R. G. Zylstra by borrowing from the guardian, Smith, in June, 1918, the sum of $4,021.53, which sum was represented by three separate notes: One in the

sum of $1,440.51 on the account of Barbara Zylstra; one in the sum of $1,440.51 on the account of Alice Zylstra; and one in the sum of $1,140.51 on the account of Klaas Zylstra. Each of these notes was secured by a mortgage on the R. G. Zylstra land. The loan represented by Alice Zylstra's money was a second mortgage, that represented by Barbara Zylstra's money was a third mortgage, and that represented by Klaas Zylstra's money was a fourth mortgage.

Klaas Zylstra was the first of the wards to become of age. On the 1st of March, 1920, R. G. Zylstra obtained a first mortgage loan of $8,000 on the premises, which sum was used to take up the first mortgage of $5,400 and to pay off the Klaas Zylstra mortgage. The guardian, in order to make this new loan possible, released the two mortgages which he held on behalf of Alice and Barbara Zylstra, and, after the new first mortgage of $8,000 had been placed on the premises, he took back two new mortgages of $1,510 each, which were payable to him as guardian of Barbara and Alice. No order was ever made by the county court authorizing the investment of the funds by the guardian.

The first mortgage of $8,000 was, on June 2, 1926, foreclosed, and on June 20, 1927, a sheriff's deed was issued thereon. The wards, Alice and Barbara, objected to the account rendered by the guardian and refused to accept from the guardian in satisfaction of his trust the R. G. Zylstra notes and mortgages. The trial court sustained the objections to the account, and held the guardian personally liable for the R. G. Zylstra loans.

■ ■ The liability of a guardian for loss in handling the property of the ward is stated in the case of Mumford v. Rood, 36 S. D. 80, 153 N. W. 921, 922, wherein this court said: "A guardian may under section 407 [now section 3543, Rev. Code 1919], procure from the county court an order authorizing and directing the investments that he shall make. If he procures such an order and complies therewith, he is fully protected thereby against any loss resulting from such investments where he is otherwise free from negligence. A guardian is not in duty bound to procure such an order where, as in this state, there is no statute requiring same, and, if he 'act honestly and faithfully and exercise sound discretion such as men of ordinary prudence and intelligence use in their own affairs,' he is not holden though loss occurs. 21

Cyc. 87-89; Pomeroy's Equity Jurisprudence, § 1070. Upon the other hand, if his investments are not such as he should have made, he can only protect himself from liability by showing that he was acting in accordance with an order of the court."

The question here presented is, Did the guardian "act honestly and faithfully and exercise a sound discretion, such as men of ordinary intelligence use in their own affairs," in making the R. G. Zylstra loans? There is no contention on the part of the respondents that the guardian acted in any manner dishonestly. The contention of the respondents is, that in making the R. G. Zylstra loans the guardian did not exercise a sound discretion such as men of ordinary intelligence use in their own affairs. The trial court sustained this contention of the respondents, and we are not disposed to disturb this finding. When the guardian made the first loans to R. G. Zylstra in 1918, he virtually loaned to R. G. Zylstra an amount equal to the entire purchase price of the land. The testimony disclosed that R. G. Zylstra paid $10,400 for this land and gave to the original owner a $5,400 mortgage. Of the $5,000 balance left on the purchase price, the guardian loaned to R. G. Zylstra an amount in excess of $4,000, leaving R. G. Zylstra's equity in the land less than $1,000. In addition to loaning this money to the extent that he did, the guardian retained in his hands no sum whatsoever, which placed him in a position where, if it became necessary to protect his investment by taking care of the first mortgage, he was helpless. It is difficult for us to conceive that a second mortgage loan of over $4,000 secured on property with a first mortgage loan in an amount of $5,400, when the conceded value of the property is only $10,400, would be the exercise of a sound discretion such as a man of ordinary intelligence uses in his own affairs, and especially is this true when the guardian is without any funds in his hands whatsoever to protect himself in the event of a foreclosure of the first mortgage.

The appellant contends, however, that the evidence establishes that in 1920, when the present loans were made, the land was worth $150 an acre, and that therefore these present loans were proper under the rule above announced. With this contention we cannot agree. The fact that the guardian allowed the first mortgage to be increased from $5,400 to $8,000 in itself would be sufficient, we believe, to conclude us in the belief that the change made in 1920

was not in any way beneficial to the wards, or the exercise of a sound discretion. So far as Barbara and Alice are concerned, it will be observed that prior to 1920 their money was invested in a second and third mortgage, subsequent to the $5,400 first mortgage. The money of Klaas was invested in a fourth montgage. After the loan of 1920, the money belonging to Alice and Barbara was invested in a second and third mortgage subsequent to a first mortgage of $8,000. After the loan of 1920, the guardian held a second and third loan in the amount of $3,010, subject to a first loan of $8,000, making total loans of over $11,000 upon property which two years before had been sold for $10,400. After the loan of 1920 as before, the guardian was left without any money whatsoever in his hands with which to protect his investment against the foreclosure of the first mortgage loan. Neither do we believe that it was the exercise of a sound discretion such as men of ordinary intelligence use in their own affairs to allow the loans in 1920 to be increased from $1,440.51 to $1,510 each. Apparently the interest had not been kept up on the first loans, and this interest was simply added to the amount of the principal, and the loan increased to that extent.

This court, in the case of Dye v. Dodd, 226 N. W. 565, 566, placed its stamp of disapproval on second mortgage loans made by a guardian when it said, "It is very generally held that second mortgages are not proper security for a loan by a guardian." It might be that there are circumstances in which an investment in a second mortgage by a guardian is proper, but, as a general rule, such loans are not proper, and certainly there are no facts in this case which will take the loan made by the guardian out of the general rule.

The appellant further contends that the wards, after reaching their majority, ratified the guardian's acts. The testimony in this connection is conflicting. The trial court found as a matter of fact that the wards had not ratified the acts of the guardian in making these loans, and we cannot say that this finding by the trial court was against the clear preponderance of the evidence.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and CAMPBELL, ROBERTS, and WARREN, JJ., concur.