VETERANS ADMINISTRATION OF THE U. S., Respondent, v. STEADMAN, et al, Appellants.

(265 N. W. 596.)

(File No. 7827. Opinion filed March 7, 1936.)

*Tom Kirby* and *Hans Hanson*, both of Sioux Falls, for Appellants.

*John A. Scotney*, Chief Atty. Veterans Administration, and *Roy Willy*, both of Sioux Falls, for Respondent.

CAMPBELL, J.   Dilworth D. Steadman is an incompetent World War veteran.   His mother, Mrs. W. D. Steadman, was appointed as his guardian by the county court of Lincoln county, S. D., in 1923, and duly qualified and entered upon the duties of the office.   Mrs. Steadman died in July, 1933, and thereafter a final report and accounting of her guardianship was filed in her behalf

by her personal representative in the county court of Lincoln county and allowance and approval thereof was sought. One of the items for which the final account asked approval and credit was the investment of $2,800 of the ward's funds by the guardian in a second mortgage upon real estate. The United States Veterans Administration appeared in the county court and objected to the allowance of this particular item. Such objections being overruled, and the item allowed, the Veterans Administration appealed to the circuit court, where their objections were sustained, and the item was disallowed. Judgment was entered accordingly, a new trial was denied, and the personal representative of the deceased guardian has appealed to this court.

The right of the Veterans Administration to appear and be heard in a matter of this kind, which has had the approval of this court (In re Moulton's Guardianship (Hines v. Moulton) 63 S. D. 535, 261 N. W. 666; In re Boschma (Hines v. Boschma) 63 S. D. 591, 262 N. W. 173), is conceded in this case.

Material facts relating to the guardian's investment of the funds of her ward in the second mortgage may be summarized thus. In June, 1926, the guardian, in good faith and pursuant to the advice of her attorney, loaned the sum of $2,800 to one Olsen, secured by second mortgage upon a well-improved quarter section of land in Lincoln county. The premises were well and reasonably worth $22,000 or more and were subject to a first mortgage in the sum of $10,000. At the time of making this investment the guardian had on hand the sum of $3,333.96, so that the investment reduced her cash on hand to $533.96 and the total assets of the guardianship after the making of such investment consisted of the second mortgage and the cash balance of $533.96. The total income to be anticipated for the ward's estate consisted only of such interest as might be obtained upon this investment and cash balance and such compensation as might be payable from time to time by the United States. The guardian made no attempt to obtain, and did not obtain, approval and leave of court prior to investing in this second mortgage. Neither did she obtain approval or leave of court in advance before renewing the mortgage, which she did at its due date in 1929. In 1926, some six months after the taking of the second mortgage, the guardian filed an annual report in the

county court stating the fact that she had made such investment, and in 1927 she filed in the county court an annual report and account on a form furnished for that purpose by the Veterans Bureau, which report recited the second mortgage as an asset of the estate, and in 1929 she likewise filed an annual report showing the mortgage as an asset and her purchase thereof in 1926 and an order was entered in the county court reciting "that said accounting be and it is hereby accepted and approved as to all funds received and disbursed and investments made for the period of the accounting," which report and order approving the same were on forms furnished for that purpose by the Veterans Bureau. A similar report was made and approval had in 1930 after taking the renewal mortgage. The Veterans Administration had knowledge of the existence of the second mortgage at all times from shortly after the inception thereof and the Veterans Administration for a number of years prepared and submitted to the court the annual accounts of the guardian and made no objection to this item until the filing of objections to the final account. The security greatly depreciated after the taking of the second mortgage and in 1933 the holder of the first mortgage foreclosed upon the property. No redemption was made, and the second mortgage was cut off by the foreclosure and became entirely worthless.

██ It is urged that, in view of the admitted value of the security in 1926, this second mortgage was a safe and satisfactory investment for a guardian to make. It is the general rule, regardless of the value of the property, that second mortgages are not proper security for a loan by a guardian, particularly where, as here, the guardian is entirely without funds to protect the investment against the first mortgage, if necessary. We see nothing in the circumstances of this case to take it out of the general rule, and we are of the opinion that the investment is not one which the guardian should be protected in making, at least without express and specific leave of court secured in advance. Dye v. Dodd (1929) 55 S. D. 429, 226 N. W. 565; Re Zylstra's Estate (1931) 59 S. D. 89, 238 N. W. 159.

██ It is urged that the subsequent "blanket approval" of all investments made contained from time to time in the orders of the county court approving annual accounts is equivalent, so far as

protection to the guardian is concerned, to procuring before making the investment an order authorizing and directing the same under section 3543, R. C. 1919, or under section 12, c. 228, Laws 1929. With this contention we cannot agree. Mumford v. Rood (1915) 36 S. D. 80, 153 N. W. 921. A distinction is argued with reference to the language of section 12 of the 1929 statute to the effect that the guardian shall invest the funds in securities "approved by the court," appellant contending that the word "approved" implies subsequent rather than antecedent action by the court and connotes ratification rather than leave in advance. Both section 12 of the 1929 statute and section 3543, R. C. 1919, are part of our law of guardianship and must be to some extent construed together. We think the approval of the court contemplated by section 12 is an approval in advance as required by section 3543. That a detailed investigation, examination, and approval of a proposed investment before made is likely to be a very different thing from a more or less cursory approval thereof subsequent to the making and in connection with the rather routine approval of an annual accounting is obvious. That the one much better protects the interests of the ward than the other is likewise obvious.

It is further urged that, since the Veterans Administration knew of this particular investment for a number of years and apparently acquiesced therein, something in the nature of an estoppel has now arisen whereby they are not in position to question it by objection to the final account. We cannot accede to this argument. It is the interest of the incompetent ward that the court seeks to protect in cases of this kind. It is doubtless true that the Veterans Administration, in a sense and to an extent, represents that interest, but the Veterans Administration cannot prejudice or destroy it. The fact, if it be a fact, that it took the Veterans Administration some six or seven years to discover that a second mortgage of this sort was not a proper investment for a guardian, and the fact, if it be a fact, that during the interim the Veterans Administration, whether through negligence or ignorance, approved thereof or acquiesced therein, cannot be availed of to the detriment of the incompetent.

We think the learned circuit judge ruled the matter correctly, and the judgment and order appealed from are affirmed.

All the Judges concur.