UNITED STATES FIDELITY & GUARAN-
TY CO. et al. v. TAGGART.
(No. 7752.)

(Court of Civil Appeals of Texas. Dallas.
April 7, 1917. Rehearing De-
nied April 28, 1917.)

1. GUARDIAN AND WARD ⬅55—CUSTODY OF ESTATE—BANK DEPOSIT.

The rule that a guardian temporarily depositing a ward's funds in a bank is not liable for loss occasioned by the bank's failure unless he agreed to leave them there a fixed period is inapplicable, where he intended to leave them there until the ward's majority, instead of investing them in bonds and mortgages, as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 4140, 4141.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 254.]

2. GUARDIAN AND WARD ⬅175—LIABILITY ON BOND.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4099, requiring a guardian's bond in double the estimated value of the personalty, and article 4150, making guardians liable for principal and interest on funds they negligently fail to invest, the guardian and his surety are liable for funds lost through failure to invest them.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 600–606.]

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Action by J. S. Taggart against the United States Fidelity & Guaranty Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Hunt, Myer & Teagle, of Houston, and Seay & Seay, of Dallas, for appellants. Wallace Hughston, of McKinney, for appellee.

RASBURY, J. Appellee, J. S. Taggart, sued appellants, W. B. Taggart, his former guardian, and the United States Fidelity & Guaranty Company, surety on his bond, to recover a sum of money for which W. B. Taggart was alleged to be liable in his representative capacity. There was trial before the court, resulting in judgment for appellee, from which this appeal is taken. The facts adduced at trial are without dispute, the substance of those essential to a consideration of the issues presented being these: W. B. Taggart was appointed and thereafter qualified as guardian for appellee, the United States Fidelity & Guaranty Company, being

surety on his statutory bond. The ward's estate consisted of policies of insurance upon the life of his father, aggregating $1,000. The insurance policies were deposited by the guardian with the banking firm of R. L. Brown & Co. of Lavon, and, when collected, the proceeds deposited to the credit of W. B. Taggart, guardian, but by agreement of all parties, the guardian, his surety and the bank, checks against the fund issued by the guardian would only be honored when countersigned by his surety. A considerable portion of the fund was paid out in that fashion. After the money had been collected appellant conceived it to be his duty to place it at interest, and planned to get a return on the money that would be great enough to make up the sums expended in attorney's fees, court costs, and advances to his ward, so that when the ward attained his majority he would have the original amount of $1,000. So planning, he inquired of R. L. Brown & Co. what interest they would pay on the money if left with them. They declined to pay anything, and the guardian indicated his purpose to withdraw the fund, whereupon R. L. Brown, for the bank, agreed in writing on February 22, 1913, that:

"This confirms our agreement as to the money left on deposit by you as guardian for Sam Taggart and we are to allow 4% on this account from date, payable annually."

The agreement signed by Brown was the entire arrangement between the guardian and the bank. It was, however, the purpose and intention of the guardian, as he frankly states, to leave the money on deposit until his ward, who was then about 18 years of age, should reach his majority, and for that reason he made no other or further effort to loan the fund. In making the deposit the guardian reserved the right to check from the fund any sum that was necessary and could be legally expended for the ward. Certain amounts for that purpose were checked out after the agreement with Brown upon the joint check of the guardian and his surety. R. L. Brown & Co., at the time the guardian made the arrangement for interest and deposited his ward's funds with them, were generally regarded in the community as solvent and financially responsible. The guardian so regarded them, and was without information to the contrary. Thereafter, on April 14, 1914, the bank failed, and after liquidation was due the guardian the sum sued for, which amount, plus the interest, represents the court's judgment. The guardian could have loaned the money in Lavon, where the bank was situated and appellant resided, at 8 per cent. per annum interest, secured by mortgage, with power of sale on unincumbered real estate worth double the amount of the loan interest, for the period of his ward's minority.

[1] The facts being as stated, appellants

contend that the judgment is erroneous, because the loss of the money was due alone to the failure of the bank. This contention has its basis in the rule that where a guardian in the exercise of due care, pending investment under direction of court, deposits temporarily the funds of the ward in a bank regarded as solvent, he is not liable for loss of the funds through failure of the bank. But he can only be held liable for a deposit so made when, without an order of the probate court, it appears that the guardian has agreed that the funds shall remain for a fixed period of time, and thereby surrenders the right to withdraw said fund during that time. Murph et al. v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69. Appellants argue that the rule last stated has no application, for the reason that there was no agreement with the bank that the money should remain on deposit for a fixed period of time. Such we believe is fairly and legitimately deducible from the evidence, notwithstanding it was clearly the intention and purpose of the guardian to leave the money on deposit until his ward reached his majority, and he did in fact leave the fund on deposit from February 22, 1913, until April 14, 1914. However, the fact that the bank had no agreement with the guardian that the money should remain on deposit for a fixed period, which the bank could enforce, does not, it seems to us, entitle the guardian to the protection of the first rule, since it is not only not disputed but affirmed by the guardian that the money was not deposited in the bank temporarily or pending order of court authorizing its investment, but deposited pending the time his ward should arrive at majority.

The facts really disclose a well-meant, but misguided and wholly unauthorized, use of the ward's funds, such as warranted the judgment rendered. By article 4140, Vernon's Sayles' Civ. Stats., it is made the duty of the guardian, under direction of the court, to invest all money, beyond what may be necessary for the education and maintenance of the ward, in bonds of the United States, the state of Texas, or any county of any district, or subdivision of any county, of any incorporated city or town, or loan the same for the highest rate of interest that can be obtained therefor. By article 4141, Vernon's Sayles' Civ. Stats., when the ward's money is loaned as directed in article 4140, the guardian is required to take the note of the borrower, secured by mortgage with power of sale on unincumbered real estate, situated in the state, worth at least twice the amount of such note, etc. The guardian in this case did none of the things required of him by the statutes, though it is shown by the evidence that he could have loaned the money in the manner required at Lavon, where he deposited same with the bank.

[2] By article 4099, Vernon's Sayles' Civ. Stats., the guardian's bond is required to be fixed in amount equal to double the estimated value of the personal property belonging to the estate, plus a reasonable amount to cover rents, revenues, and income from the real estate, conditioned that the guardian will faithfully discharge the duties of guardian of the estate of such ward according to law. The bond given by appellant in this proceeding was in compliance with the statutory provisions. Such bond, of course, comprehends the safeguarding of the corpus of the estate, and upon a failure of the guardian to do as much, he and his surety will be liable therefor as in devastavit by neglect, while by article 4150, he is liable for interest when the corpus is money. It was, we apprehend, to avoid and protect against such misfortunes as appellant fell into in the use of his ward's estate that the statutory provisions directing the precise manner in which the ward's funds should be invested and the security therefor taken were enacted; and, while it clearly appears that appellant acted in utmost good faith, he is nevertheless bound, as the trial court found on the grounds we have stated.

While we prefer to place appellant's liability on the grounds we have, it nevertheless seems, as argued by appellee's counsel, that appellant and his surety are unconditionally liable for the loss to the estate due to the failure of the bank, because of the act of the guardian in placing joint control of the ward's money with his surety, since fiduciaries who enter into an arrangement by which they surrender or limit their control of the trust fund become guarantors thereof, irrespective of their motives or whether their action was the cause of the loss. The doctrine is announced by the text-writers and supported by many cases. 1 Lewin on Trust, 417; Perry on Trusts (5th Ed.) § 443; Fidelity & Deposit Co. v. Butler, 130 Ga. 225, 60 S. E. 851, 16 L. R. A. (N. S.) 994; Barney v. Saunders, 16 How. 535, 14 L. Ed. 1047; McCollister v. Bishop, 78 Minn. 228, 80 N. W. 1188; Wood's Estate, etc., v. Surety Co., 159 Cal. 466, 114 Pac. 992, 36 L. R. A. 252; Ann. Cas. 1915C, 50.

The judgment is affirmed.