SHAW, Banking Com'r, v. DALSTON.
(No. 3636.)

Court of Civil Appeals of Texas. Texarkana.
March 23, 1929.

Rehearing Denied May 9, 1929.

John W. Goodwin and L. C. Sutton, both of Austin, and Joe Goodwin, of Jacksonville, for appellant.

F. H. Prendergast, of Marshall, and Young & Stinchcomb, of Longview, for appellee.

LEVY, J. (after stating the case as above). The following assignment of error is made by the appellant banking commissioner:

"The court erred in finding that the deposit sued for and involved in this case was a non-interest-bearing deposit and one upon which no interest was being paid or contracted to be paid, there being no evidence to that effect."

The evidence definitely showed that, beginning on November 22, 1924, and continuing to March 31, 1926, the first appointed guardian regularly deposited in the bank and to his credit as guardian the money in the amounts received through warrants of the federal government. The books of the bank showed the balance of $3,558.31 on deposit to the credit of the guardian as such at the time the bank was taken over by the banking commissioner on September 29, 1926, for the purpose of liquidation. The $3,558.31 included, as admittedly proven, the following item which appeared on the bank book as a deposit to the credit of the guardian, namely: "April 6, 1926,—$186.28." It was agreed that such item was a credit of interest in that sum and of that date. The guardian's account was then offered in evidence as an explanation and admission that the deposit of April 6 was interest allowed and credited by the bank and accepted by the guardian on the deposit of $3,558.31 at 4 per cent. interest from April 6 to December 31, 1926. The guardian's account was rendered to the probate court on April 8, 1926, and showed, under the head of "receipts," the item, namely, "By interest on bank balance at 4% to December 31, 1926—$186.28." There is no conflict of evidence in respect to such matter of interest on the deposit. There is no direct evidence that the deposit was one upon which no interest was being paid, or contracted to be paid, by the bank at the time of the closing of the bank on September 29, 1926. By the record evidence so offered a prima facie case was shown of an agreed upon interest-bearing deposit in the bank before and at the time of the closing of the bank. It appears that the bank had done everything necessary to be done according to the terms of the agreement in allowing and placing on its books to the credit of the guardian the amount of interest agreed upon. It had thereby fully invested the guardian with the immediate dominion over the interest parted with. Clearly the money on deposit became a part of the assets of the bank, and the bank became the debtor to the guardian upon his contract of loan. Therefore such executed agreement would, as between the bank and the guardian, bind both the bank and the guardian, unless it was, as insisted by the appellee guardian, a contract obligatory on neither party, because void and a mere nullity in force of the statutes. If wholly void, it was void as to everybody whose rights would be affected by it, if valid.

As bearing upon the illegality of the agreement, the appellee proved that the first guardian made deposit of the funds in the bank in the first instance, and made the arrangement for interest thereon at a later period without any order of the probate court to do so. The fact that the guardian did such particular acts, of placing the ward's money on deposit in the bank and making arrangement for interest thereon without an order of the probate court to do so, would not have the legal effect to make such acts void and a mere nullity as between the bank and the guardian as such. Such mode of acting, in dealing with the trust money, without an order of the probate court, was within the general authority of the guardian. The bank could deal with him and make binding agreement in such particular respects upon the general authority of the guardian as such to do the very acts. The guardian was undertaking to make the arrangement, not in his own right, but merely as agent of the estate. Portis v. Cole, 11 Tex. 157, Price v. McIvre, 25 Tex. 769, 78 Am. Dec. 558.

In doing these acts in such manner, the guardian merely assumed the entire risk of personal liability to the ward for the loss of the money in case the particular acts were such as a prudent business man was not justified in doing. The procuring by the guardian of an order of the probate court need only be done as a matter of protection to the guardian against becoming personally chargeable with the loss resulting and liable to the ward's estate therefor.

It will be observed that the statute does not inhibit a guardian from depositing the money of the ward in a bank, nor from obtaining interest thereon without an order of the probate court to do so. First, the possession and the management of the property belonging to the ward is expressly confided in the guardian of the estate. Article 4164, Rev. St. 1925. A bond is required of him for the faithful discharge of the trust so reposed in him as guardian. Article 4141, Rev. St. 1925. His powers and obligations are similar to those of a trustee, with the distinction that a guardian does not have title to the ward's property, but, instead, has only the custody and management of such estate. Next, the guardian's dealing with the invest-

ment of the ward's surplus money is expressly defined. The guardian may invest the ward's surplus money in real estate. Article 4182, Rev. St. 1925. The guardian may invest the ward's surplus money in bonds, or loan the same at interest. Article 4180, Rev. St. 1925. It is made a direct violation of the statute to invest the money in real estate without procuring an order of the probate court. Articles 4182–4185. The title to such real estate so purchased shall be in the ward. Article 4186, Rev. St. 1925. A violation of the positive direction of the statute has the effect to make such character of investment illegal both as to the ward and the vendor. Smoot v. Richards, 8 Tex. Civ. App. 146, 27 S. W. 967; Hurst v. Marshall, 75 Tex. 452, 13 S. W. 33.

■ On the contrary, the direct power of obtaining interest on the ward's money is expressly conferred upon the guardian. Article 4180, Rev. St. 1925. The evidence of the loan, as note of the borrower, does not have to be taken in the name of the ward. The general obligation is imposed upon the guardian to lend the money at interest. Articles 4187–4189. If he negligently permits the money to be unproductive, then such guardian becomes personally chargeable with interest that should have been obtained by the exercise of reasonable care and diligence. Article 4189. Such duty to render the trust money as productive as consistent with its security is predicated upon the obligation "to take care of and manage such estate as a prudent man would manage his own property." Article 4165. Upon this principle the guardian may deposit the ward's money temporarily in a bank of reputed solvency pending investment or other disposition of the same. The fact of leaving the money on deposit in the bank for a fixed period of time without interest imputes to the guardian the failure to exercise reasonable care and prudence to make the money productive; and, because of negligence, such guardian may be compelled to make good the loss resulting. 3 Pomeroy on Equity, § 1072; Murph v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69; Fidelity & Guaranty Co. v. Taggart (Tex. Civ. App.) 194 S. W. 482.

Such care, prudence, and judgment as a prudent man would exercise in the transaction of his own business furnish the standard to govern a guardian in the custody and management of the ward's money, including lending it at interest. The guardian may, however, procure an order from the probate court to lend the money at interest, although he is not in duty bound to do so. Article 4190. The effect of the order of the probate court authorizing the lending of the money at interest is merely to protect the guardian from personal responsibility for the loan. Article 4190, Rev. St. 1925; 28 C. J. § 234, p. 1140; 21 Cyc. p. 87; Mumford v. Rood, 36 S. D. 80, 153 N. W. 921.

■■ Therefore, having the statutory direct authority to take interest on the ward's money, and being under the general obligation to do so, the guardian in this case may not be said to have acted without authority or without the scope and extent of his general power in arranging for interest on the note. The bank had a right to rely upon such general power of the guardian, and did not have to inquire whether he was specially authorized by the probate court to place the deposit in the status of an interest-bearing account. Since the bank was enabled to enforce the agreement because it was within the general authority of the guardian to make, the banking commissioner may do so as against the depositor's guaranty fund. He found the agreement existing at the time the bank was taken over for liquidation, and the statute expressly denies participation in the depositors' guaranty fund to any "deposit upon which interest is being paid or contracted to be paid." Article 447, Rev. St. 1925. The assignment of error must be sustained.

■ On cross-appeal, the appellee guardian seeks to have a preferential payment of the claim out of the assets of the bank, and at all events a judgment against the sureties on the former guardian's bond, in case there is denial of classification of the claim for payment out of the depositors' guaranty fund. It is believed that in the circumstances of the case a preferential payment of the claim may not be allowed out of the assets of the bank. As appears, the money was deposited by the guardian in the bank in the relation of bank and depositor, and not merely to be kept intact and not commingled with the bank funds. The bank was not insolvent at the time the money was deposited therein by the guardian, as shown by the evidence. Steele v. Allen, 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1203. It was agreed that the bank "became insolvent on April 6, 1926." And the guardian, under his general authority to do so, lent the money at interest to the bank, thereby making the bank a debtor to the guardian upon his personal contract. The money then became a part of the general assets of the bank. Such act of the guardian not being in contravention of the statute, the agreement would be legally enforceable by the bank, and necessarily enforeable by the banking commissioner, and the present guardian cannot reclaim the funds under the ward's original title. There was direct violation of the statute in case of Hurst v. Marshall, 75 Tex. 452, 13 S. W. 33, and that case is not applicable here. The remedy of the present guardian is upon the personal liability of the former guardian.

■ The liability of the sureties on the bond of the former guardian for the money on deposit appears inescapable from the record. The guardian made the loan to the bank at a time when the bank was insolvent. He made the loan on April 6, 1926; and on that date, according to the agreed facts, the bank "became insolvent." Also, he made the loan with-

out security. The statute expressly directs that security for the loan of the money shall be taken by the guardian, and expressly directs the proper kind of security that shall be taken by him. Article 4181, Rev. St. 1925. He also agreed that the deposit balance bear interest "to December 31, 1926," which was for six months' time. Therefore, in the circumstances, the guardian acted without due care, diligence, and good faith in lending the money at interest to the insolvent bank without security. It was clearly a breach of duty on the part of the guardian; and it is generally held that the guardian is answerable to the ward for the resulting loss in such a case. Murph v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69; Kunz v. Ragsdale (Tex. Civ. App.) 200 S. W. 269; 28 C. J. p. 1143; 21 Cyc. p. 91; 3 Pomeroy, Eq. Jur. § 1073.

There was introduced in evidence an order of the probate court of date July 13, 1926, approving an annual report of the guardian. The report showed as "receipts" the interest obtained by the guardian on the loan to the bank. The primary purpose of the evidence seems to have been to show that, in effect, the court approved the loan. Such approval of the account would not have the legal effect of releasing the guardian from all liability for the loan and loss resulting. The probate court is not called upon, when considering an annual report, to pass upon the propriety of making investment by way of interest, as it would be in case the guardian was seeking, through an order, to place the responsibility upon the court, and thus seeking to release himself from future losses. If the guardian desires protection through an order of the probate court, he must procure such order in the manner provided by article 4191. Corcoran v. Kostrometinoff (C. C. A. 1909) 164 F. 685, 21 L. R. A. (N. S.) p. 399; Mumford v. Rood, 36 S. D. 80, 153 N. W. 921.

The proceeding by certiorari to set aside such order of the probate court is of immaterial consequence in the case, for the reason that the order of the probate court was not the equivalent of a prior authorization of the loan. But, assuming that the order of the probate court would be the equivalent of an authorization of the loan by the guardian, yet the judgment of the court on certiorari, setting aside the approval, would have the effect of a refusal of the court to approve the loan. In this connection, however, it will not be understood that the disapproval of the probate order had the effect in any wise to invalidate the prior agreement of the guardian and the bank, as between the bank and the guardian. It was not within the power of the probate court to set aside the completed agreement made with the bank. The probate court could merely refuse to approve the loan, leaving the entire risk of the loan upon the guardian. Neither is the personal direction of the county judge to the guardian to file claim against the guaranty fund of legal or evidentiary importance in the case. It became merely a personal act of advising, and was not equivalent to a judicial order. As an order it was a nullity, because not recorded in the minutes. Art. 4107, Rev. St. 1925; Teague v. Swasey, 46 Tex. Civ. App. 151, 102 S. W. 460. It follows from the record that the first guardian and his bondsmen are liable to the ward for the full amount of the loss resulting. The sureties, however, are entitled to be subrogated to the rights of the ward upon paying the judgment.

The judgment is reversed, and judgment is here rendered thus: Allowing recovery by the appellee guardian against the banking commissioner in the sum of $3,850.80, and that such sum be classified and payable as a common debt out of the general assets of the bank in the hands of the banking commissioner; allowing recovery by the appellee guardian against the sureties of the first guardian in the sum of $3,850.80; allowing the sureties to be subrogated to the appellee guardian's rights against the funds of the bank upon the payment by the sureties of this judgment; the guardian and the sureties to pay all the costs of the trial court; the appellee guardian and the sureties of the first guardian's bond to pay each one-half of the costs of appeal.