## LEGLER v. LEGLER.

### No. 7510.

Court of Civil Appeals of Texas. Austin.

March 4, 1931.

Rehearing Denied March 25, 1931.

Jno. P. Ehlinger, of La Grange, for appellant.

George Willrich, of La Grange, for appellee.

BLAIR, J.

Appellant, Josef Legler, Sr., filed his application to be appointed guardian of the person and estate of his wife, Augusta Legler, who had been adjudged to be of unsound mind. Appellee, Louis Legler, a brother of the said Augusta Legler, contested the application, alleging that appellant was unfit and especially disqualified to act as such guardian under article 4122, which provides that no person "whose conduct is notoriously bad" shall be appointed guardian of the person or estate of a person of unsound mind; and further alleging that he (appellee) was not disqualified to act as guardian of the person and estate of his sister, and prayed that he be so appointed. The county court denied appellant's application, and appointed appellee guardian, and, on appeal by appellant to the district court and a trial de novo, appellee's appointment was confirmed; hence this appeal.

By two propositions appellant contends that neither appellee's pleadings nor the facts proved show him to be disqualified to act as guardian of the person and estate of his insane wife, in view of article 4121, which provides that, if an insane wife "have a husband * * * who is not disqualified, such husband * * * shall be entitled to the guardianship in preference to any other person;" and in view of article 4276, which provides that, if the person of unsound mind "committed to guardianship is married, the husband or wife of such person * * * shall be entitled first in order to the guardianship."

In substance, appellee alleged and proved the following facts: That in January, 1901, appellant and the said Augusta Legler were married, and, although they had the same surname, they were not related. In December, 1908, Augusta Legler was tried and found to be of unsound mind, and was confined in a hospital for insane persons for a short time, when her mentality was apparently restored. She was again tried and found to be of unsound mind, in 1914, and since which time she has continued insane except for lucid intervals of short duration, but she had not been confined in a hospital for insane except for short periods of time on several occasions. Some seven or eight years before appellant filed his application in 1925 for appointment as guardian of his insane wife, he employed a negro woman as his cook and housekeeper, and she with her small children moved into the home of appellant and his insane wife. Appellant was shown to have paid this negress and her children marked esteem, affection, and kindness. The negress was given charge of the household management, and showed discourtesy to Mrs. Legler, who protested the acts of her husband and the negress, and attempted to drive the negress from her home; but appellant prevented her from doing so, and on this and other occasions whipped or beat his wife severely, and on this occasion either drove her from the home or she left without being restrained by appellant, and went to her father's house, since which time she has lived alone in a small shack out in a pasture under the supervision and care of her mother and father, until their respective deaths, and has supported herself by working in the field or for appellee. For more than ten years prior to the trial of this case, appellant paid no attention to the welfare or support of his insane wife, but completely abandoned her, as shown by his following testimony:

"I haven't been there where she is now, she is there at the old home where they used to live, and it is just a little room left there I think a kitchen or something.

"When her father and her oldest brother sued for a divorce, after that I went down, she lived in the old shack in the pasture and I told her to come home, that was 5 years ago, I haven't been to see her since, I stated awhile ago that sometimes I would hear that she had been sick, when I heard this she was up and about, I did not go there to ask her how sick she had been. I have been going there enough to get her home, if I can't get her to come and stay, I can't run about that way, and I don't know what they have in mind, going over there on their place."

"The Court: How much money have you contributed to the support of this woman for the past twelve months?

"Answer: None. I did not contribute any money for her support in the last 10 years."

The evidence further showed that, from the first time Mrs. Legler was adjudged insane, her father and probably several of her sisters and appellee charged appellant with being the cause of her insanity as the result of his brutal and cruel treatment of her. When Mrs. Legler's father executed his will, he made appellee trustee of the property given her, and provided that he did not wish for appellant to have any part or benefit in such estate. Appellee probated this will, and was executing the trust imposed at the time this application was filed. This interest in her father's estate, amounting to $2,338.08, together with an interest in insurance policies on his life, and the interest which she inherited from her mother's estate, amounting to $2,338.08, constituted her sole and only estate, and of which, after the death of her father and some seven or eight years after appellant had abandoned her as above stated, appellant applied for guardianship as well as for the guardianship of the person of his insane wife.

The preceding pleadings and evidence fully sustain the conclusions of the trial courts that appellant is unfit and disqualified to act as guardian of the person and estate of his insane wife. We find no decision which construes the meaning of the language "whose conduct is notoriously bad," as used in article 4122, as disqualifying one seeking appointment as guardian of the person or estate of a person of unsound mind. But whether appellant's above detailed conduct toward his insane wife and his utter lack of attention and care for her be notorious, it is "bad" conduct, rendering him wholly unfit to act either as the guardian of the person or estate of this unfortunate being. Certainly the appointment of appellant would not be in keeping with that provision of article 4121 which provides that the appointment of a guardian of the person or estate of a person of unsound mind should be made "according to circumstances, taking into consideration the interest of the ward alone," because he has wholly abandoned her to her plight for more than ten years. The case

and statutes here involved are very similar to the cases and statutes with reference to the appointment of a father as guardian for his minor child. Both the latter statutes and decisions construing them hold that a father has preferential rights to be appointed guardian of his minor child; but that, where he has knowingly and willfully abandoned the child, or has so conducted himself as to be unfit to act as guardian, or where he appears indifferent, negligent, and cruel, he loses his preferential right to guardianship. Thomason v. McGeorge (Tex. Com. App.) 285 S. W. 285, 287; 28 C. J. 1079, § 46 (2), and cases cited in footnote 31. In fact, the statutes with respect to guardianship of minors are made applicable to guardianship of persons of unsound mind by article 4274, which reads as follows:

"Each provision of this title relating to the guardianship of the persons and estates of minors shall apply to the guardianship of the persons and estates of persons of unsound mind * * * in so far as the same are applicable."

We affirm the judgments and orders of the trial courts in all things.

Affirmed.