### LEGLER et al. v. LEGLER.
No. 9507; Motion Nos. 10193, 10192.

Court of Civil Appeals of Texas. Austin.
July 11, 1945.

Rehearing Denied July 25, 1945.

Second Rehearing Denied Aug. 4, 1945.

506

Richard Critz, of Austin, and Moss & Moss, of LaGrange, for appellant.

C. C. Jopling, of LaGrange, for appellee.

BAUGH, Justice.

Appeal is from the judgment of the district court, approving, upon appeal to that court from the probate court, the final account of Louis Legler as guardian of the person and estate of Augusta Legler, a person of unsound mind. The record shows the following:

Louis Legler was the brother of his ward, Augusta Legler. Their father, Anton Legler, died testate in 1924. Their mother had died intestate prior to that time. In his will, duly probated, and of which Louis, appellee here, was appointed independent executor, Anton undertook to distribute amongst his eleven children both his community estate and that of his deceased wife; and made Louis trustee of the share devised to Augusta, directing him, among other things to "invest her share as he sees proper and pay her the interest * * *."

In 1925 Josef Legler, husband of Augusta, who had abandoned her about ten years prior thereto, made application to be appointed guardian of the person and estate of Augusta, then insane. This application was contested by Louis Legler, the contest sustained, and Louis was appointed guardian of her person and estate on October 5, 1925. See Legler v. Legler, Tex. Civ.App., 37 S.W.2d 284. He qualified as such, took possession of her estate, consisting of interest bearing notes aggregating $4670, one-half of which passed to her under the will of her father, of which Louis became independent trustee, and the other half, or $2335, by inheritance from her mother. The probate court assumed jurisdiction in the guardianship proceedings only over the one-half inherited by Augusta from her mother. Thus Louis had control and management of her estate, one-half as trustee under the will, independent of the probate court; and one-half as guardian subject to the orders of the probate court, and the statutes relating to guardianships.

Louis rented a small house for his ward near his own home where she lived until 1942, when she was placed in the State Hospital, at Austin, Texas, and remained there until her death on May 5, 1944. Thereupon Edna A. and Frank Legler, children of Augusta, filed an application in the probate court to require Louis Legler, as guardian, to make an accounting and final settlement with them of the estate of their deceased mother. Louis thereupon filed a final account, showing payment to appellants of $1,800, claiming commissions to himself in the sum of $229.25, and showing a balance due appellants of $209.50. Appellants excepted to this account on numerous grounds, but chiefly on the grounds that Louis had not, during his entire guardianship of some 18 years, made any annual reports and had not invested the funds of his ward as required by law, nor expended the income therefrom as required by law; and prayed that he be required to pay to them the principal of the estate with interest thereon at 10% compounded annually. The probate court approved the account as filed, including commissions, and allowed Louis, as guardian, $125 as attorney's fees and $75 as court costs, to be paid out of Augusta's estate.

Upon appeal, the district court, after a full hearing in which the original account was corrected and restated more in detail, but not substantially changed, approved the account as restated, refused to allow the guardian any commissions, but did allow the attorney's fees and costs as proper charges against the estate. From this judgment the contestants have appealed. Appellee has cross assigned as error the refusal of the court to allow him the commissions claimed.

Appellants present fourteen points of error, several of which include the same

general contentions and may be considered together. The first is that the court should have disapproved the account because the guardian made no segregation of that portion of the ward's estate held by him as guardian from that portion held by him as trustee under his father's will; but treated both such portions as one, commingled them with his own individual funds, made and collected investments in his own name, and handled same as if they were his own without in any manner separately identifying either of said funds.

■ The record affirmatively shows such facts to be true. The entire estate of Augusta Legler when taken over by Louis consisted of notes. In reality it was but one estate, one-half of which he controlled as independent trustee, and one-half as guardian, subject to the jurisdiction of the probate court. The two interests were already commingled and for all practical purposes constituted but a single estate of which the ward was the sole beneficiary. While the guardian did not segregate the two nor return any annual accounts relating to the guardianship, as the law requires, he did keep an accurate set of books showing all investments, income and expenditures of the ward's estate, and detailed same by years in his final account. It was not shown that failure to segregate the two portions of the estate and report to the probate court as to the portion controlled as guardian, resulted in any loss to the estate, or in anywise interfered with prudent management or investment of the ward's funds. Consequently we are of the opinion that mere failure to segregate the two portions and handle them as two separate estates, when in reality they constituted but one estate, would not warrant the court in disapproving the final account on that ground.

■ It is also urged that the court should have disapproved the account because the guardian did not invest the ward's funds as provided in Art. 4180, R.C.S.; nor file annual accounts as guardian as required by Art. 4297, R.C.S. The record shows that at no time did the guardian seek the approval of the probate court in investing his ward's funds either before or after such investments were made. His failure to do so does not, however, render such investments void. While Art. 4180, R.C.S., specifies the character of securities in which a ward's funds may be invested; Art. 4181 provides for security for such money loaned; and Arts. 4182–4185 provide that such trust funds cannot be invested in real estate, except under order of the probate court; it is also true that Art. 4165 provides: "It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits and revenues as the estate would have produced by such prudent management."

■ A guardian may invest his ward's funds in the securities prescribed in Art. 4180 without an order of the probate court. Attaway v. Ellis, Tex.Civ.App., 173 S.W.2d 367; 21 Tex.Jur. Sec. 48, p. 272. In a case where the guardian, without any order from the probate court placed his ward's funds as an interest bearing deposit in a bank, which subsequently failed, the court in Shaw v. Dalston, Tex.Civ.App., 18 S.W. 2d 215, 220, writ ref., laid down the following rule as determining the liability of the guardian:

"Such care, prudence, and judgment as a prudent man would exercise in the transaction of his own business furnish the standard to govern a guardian in the custody and management of the ward's money, including lending it at interest. The guardian may, however, procure an order from the probate court to lend the money at interest, although he is not in duty bound to do so. Article 4190. The effect of the order of the probate court authorizing the lending of the money at interest is merely to protect the guardian from personal responsibility for the loan. Article 4190, Rev.St. 1925; 28 C.J. § 234, p. 1140; 21 Cyc. p. 87; Mumford v. Rood, 36 S.D. 80, 153 N.W. 921."

If, due to mismanagement, neglect, waste, failure to use diligence or other improper handling of his ward's funds, her estate had suffered any losses during his trusteeship, the guardian and his bondsmen would undoubtedly have been liable for the loss. But no such claim is made by appellants. On the contrary the record affirmatively shows that the ward's estate was managed prudently and diligently and that during the 18-year period, which included the depression years of the early 1930's, the corpus of the estate was preserved and an annual average income of between 5% and 6% earned for the entire period.

■ While Arts. 4225 and 4226 require such guardian to file annual ac-

counts, his failure to do so does not render him and his bondsmen personally liable unless the estate of his ward suffers some loss as a result of such failure. His liability is based upon failure or neglect to prudently invest his ward's funds; not upon his failure to annually report to the probate court his management of the estate. Art. 4187 and Art. 4189. The law requiring annual reports is obviously intended for the protection and preservation of the estate, and to insure proper management; and not in derogation of the duties imposed upon the guardian by other statutes to manage same prudently and diligently so as to produce an income for the benefit of his ward. It is also to be noted that a mandatory duty is imposed by law upon the probate court to see to it that such accounts are filed, Art. 4227; and it was held in Heyn v. Massachusetts Bonding & Ins. Co., Tex.Civ.App., 110 S.W.2d 261, that his failure to do so is negligence per se, for which he and his bondsmen are liable if loss to the estate result from such negligence. The remedy for failure to make such reports is by removal as prescribed in Art. 4234 (Vernon's Ann.Civ.St. art. 4234) after notice prescribed in Art. 4227. Of course, if loss to the estate result from the guardian's negligence to perform his statutory duties, he and his bondsmen are also liable. Shaw v. Dalston, Tex.Civ.App., 18 S.W.2d 215. But in the instant case, no loss to the estate was shown, and no claims made against either the guardian or the probate judge or their bondsmen. The contention here being that the account should be disapproved because the guardian had not complied with the law. Under the facts and circumstances of this case, conceding that the guardian failed utterly to comply with the statutes in the respects asserted, the estate having suffered no loss from such failure, the court was warranted in approving his final report, and in refusing to penalize him personally.

It is next contended that the report should be disapproved because it shows that the guardian expended more than the clear income from the estate, without an order from the probate court to do so, for the support and maintenance of his ward. This contention, however, is predicated upon the further proposition that because the guardian had not invested his ward's funds in the securities prescribed by Art. 4180, such investments were illegal, subject to repudiation by appellants, and that both they and the income therefrom should be disregarded. In brief, that there was no legal income from the estate, and consequently, all expenditures for the benefit of the ward were in excess of income, were unauthorized and the guardian should be charged with them personally. Such contention is clearly untenable. It is settled law that a guardian cannot legally expend for the benefit of his ward funds in excess of the net income from the estate without an order from the court. Art. 4171; 21 Tex.Jur., Sec. 55, p. 282, and cases cited. This rule, however, does not here apply because the report shows, with minor exceptions in two of the 18 years, which are inconsequential, that the expenditures made by the guardian for the benefit of his ward were less than the actual net income from her estate. In fact such expenditures by him for that purpose were obviously meager and inadequate for her proper support and maintenance; and would have been insufficient had they not been supplemented by contributions made by her children, appellants here.

It is next contended that the allowance of the $125 attorney's fee is excessive in that the guardian had failed to file annual reports, and that if he had done so, the matter of filing the final account would have been simple. Had he filed annual accounts he would under Art. 4312, R.C.S., have been entitled to a reasonable attorney's fee for each. Upon the death of his ward he was required to make a final report and settle the estate, R.C.S. Arts. 4296–4308, regardless of previous derelictions. For this purpose he was entitled, in the sound discretion of the trial court to a reasonable attorney's fee payable out of such estate. In view of the report to the probate court, the services involved, and the appeal therefrom to the district court, said fee was not only shown by the testimony to be reasonable, but appellant's counsel admitted upon the trial that if appellee were entitled to charge to the estate any fee at all, the amount was very reasonable.

Complaint also is made as to an item of $50, part of the attorney's fee paid on June 5, 1925, to George Willrich, on the ground that appellee was not appointed guardian until October 5, 1925. Such fee was in connection with the contest of the application made by Josef Legler, Sr., husband of said ward, for appointment as guardian of the person and estate of

Augusta. Just when that application was filed is not shown. As the result of that contest appellee was appointed, both because Josef, Sr., was unfit, and for the protection of her estate. See Legler v. Legler, Tex.Civ.App., 37 S.W.2d 284. Any reasonable attorney's fee necessary for that purpose was clearly authorized and the item complained of was obviously expended for the benefit of the ward and for the protection of her estate as the contest and appointment of Louis clearly demonstrated.

The next contention is that neither the costs in the probate court, nor those incurred in the district court, should have been taxed against the estate. Ordinarily costs incurred in making a final report are proper charge against the estate; and likewise in the district if the report be approved there on appeal. While the instant case does not present a strict analogy to a suit for a money judgment, or other affirmative relief, e.g. an appeal from the justice to the county court, or from a judgment of a district court; we have concluded that the rule applicable in such cases, should be applied here. Commissions of $228.95 out of said estate were allowed the guardian by the probate court. Obviously he would have been personally benefitted to that extent; and the amount of the estate left for distribution to the heirs (appellants here) would have been reduced by that sum. A proper closing of the guardianship and settlement of the estate in the probate court was the purpose and objective of the final report. Had that been accomplished in that court, reasonable costs should appropriately have been charged to the estate. However, the appeal to and trial de novo in the district court discloses that a proper final account was not made in the probate court; and that the settlement there approved, would have netted the heirs less money in the distribution than a proper judgment of the district court would have entitled them to receive; and that the difference would have inured to the personal benefit of the guardian but for the appeal.

The record discloses that the final account filed by the guardian in the probate court showed commissions claimed by Louis Legler individually in the sum of $228.95; attorney's fees of $125; costs in the sum of $75; leaving a balance for distribution to appellants (who had already been paid $1,800) in the sum of $209.50. Such was approved by the probate court. On appeal to the district court the account was restated, showing claim of commissions in the sum of $207.64; attorney's fees of $125, and $260.82 for distribution to appellants. The district court's judgment, however, found that the guardian owed the estate $668.46, less attorney's fee of $125; or $543.46, from which, under said decree, costs both in the probate court and in the district court should be deducted. And further deducting commissions in the sum of $207.64, there still remained for distribution to appellants $335.82, less costs, instead of $209.50. In brief, the appellants justified their appeal to the district court by securing in the final account approved there a larger sum for distribution to them than that authorized and approved by the probate court; and but for that appeal, the difference, less the costs of the probate court, would have inured to the guardian, appellee here, individually. Under such circumstances, and within the spirit and purpose of Rule 139, Texas Rules of Civil Procedure, we are of the opinion that the costs both in the probate court and in the district court should have been taxed against Louis Legler individually, and not against the estate of his ward. There is no indication nor contention that the trial court undertook to tax such costs in accordance with Rule 141, Texas Rules of Civil Procedure, and no statement in the record, as required by said rule, that he did so.

Complaint is also made of the approval of items aggregating $630 paid over a period of some 16 years by the guardian for rent of a house near guardian's home for his ward to live in. This on the ground that the ward and her husband, Josef Legler, had a home occupied by Josef, in which she could have lived. This contention is without merit. The evidence shows, as does the record in Legler v. Legler, 37 S.W.2d 284, that Josef had long since completely abandoned his insane wife; that because of his unfitness the probate court had denied him the guardianship of her person; that throughout the entire guardianship he never went to see her nor contributed anything to her support and maintenance. Louis Legler also testified that it was necessary for him to have her near his own home where he could look after her welfare, care for her when sick,

512

and see that she was properly fed and clothed. No contention is made that the rents were unreasonable; and under the circumstances we think they were clearly necessary and proper.

■ Complaint is also made of cash payments by the guardian to his ward aggregating, for the entire period, some $1,587, for most of which the guardian took her personal receipts. Being insane, she was, of course, wholly incompetent to contract or legally receipt for moneys received; and such receipts were incompetent for any purpose. While the law contemplates that the guardian shall himself purchase and pay for necessities for his ward; the testimony shows that in the instant case the ward had lucid intervals and possessed sufficient mental capacity to purchase simple necessities in food and clothing; and that the cash furnished her in sums of from $6 to $10 per month by her guardian was actually used and expended by her for that purpose. Her guardian so testified and there is no evidence to the contrary. An insane person can be held for the value of necessaries; or for money loaned if actually spent for necessaries. 24 Tex.Jur., Sec. 8, p. 382. For such, her estate was liable and if, as Louis testified, the moneys furnished by him to her were expended for that purpose, the method of payment was not material.

■ The last objection urged against approval of the account is that the court failed to appoint an attorney under Art. 4305, R.C.S., to represent the interest of the ward in the final settlement with the guardian. This, obviously, for the protection of the estate against any claim against it or against any interest of the guardian adverse to it. This error, if it be conceded to be such, was obviously harmless for the reason that the appellants are the sole heirs of the deceased ward, entitled to receive all of the residue of her estate after payment of legal expenses, and were represented by competent counsel throughout. Their interests were identical with those of the estate, which they inherited, and the purpose of Art. 4305 was fully accomplished without appointment of other counsel.

■ Considering now the cross-assignment of appellee that the district court erred in not allowing him the statutory 5% commission provided for in Art. 4310, R.C.S., we have reached the conclusion that

it should be sustained. The probate court allowed such commissions, though erroneous as to amount. It now seems well settled that where a guardian has mismanaged his ward's estate, has failed to account to his ward, or through neglect, wrongful withholding of funds to his ward's loss, or injury to his estate, the trial court as a punishment may, in its discretion, deny payment of commissions out of the estate, thus further depleting it. See Am. Surety Co. v. Hardwick, Tex.Civ. App., 180 S.W. 806; Moroney v. Moroney, Tex.Civ.App., 280 S.W. 254, 260, approved by Supreme Court in, Tex.Com.App., 286 S.W. 167, 170. No such case is, however, here presented. While the guardian utterly failed to make the reports required by law and to invest the funds in the securities prescribed by law; he did manage it with prudence, keep accurate accounts of all income and expenditures, preserve it intact over a period of 18 years, account to the ward's heirs in full, in addition to looking after the personal welfare of his unfortunate sister and expending some of his own funds in her behalf without charge. There is no evidence that he profited in any amount from her estate, or that he misappropriated one cent of it, or caused it through his management to suffer any loss. This is not a suit against the guardian and his bondsmen asserting any loss. No bad faith, misappropriation of funds or moral turpitude on the part of the guardian was shown; but only that he failed to follow statutory requirements. This, according to his testimony, was due to ignorance of such legal requirements; and perhaps induced in part by the fact that as trustee, under his father's will, of one-half of her estate, he was independent of, and not required to account to, the probate court.

On the other hand, the only compensation allowed him by law or claimed by him for his services over a period of 18 years, both in managing said estate and as guardian of her person, was the commission claimed, aggregating $207.64. Regardless of his derelictions in making annual reports, since there was no mismanagement and no loss to the estate; but on the contrary a full accounting; and both the probate court and the district court with minor variations approved his stewardship of the trust imposed upon him; we think the trial court abused its discretion and was clearly wrong in not allowing as a reasonable

compensation for his services the commissions allowed by law payable out of the estate.

From what we have said it follows that the trial court should have taxed the costs of both the probate court and of the district court against Louis Legler, individually, not against the estate of Augusta Legler; and should have allowed Louis Legler the sum of $207.64 as commissions to be paid out of said estate before distribution thereof to appellants.

The judgment of the trial court is therefore affirmed in part, and in part reversed and remanded to the trial court with instructions to modify its judgment in accordance with this opinion, and as so modified to certify same to the probate court for observance.

Affirmed in part and in part reversed and remanded with instructions.

On Appellants' Motion for Rehearing.

█ Appellants complain, among other things, of our holding that they were the sole heirs of Augusta Legler and entitled to receive the residue of her estate, for the reason that Josef Legler, Sr., her husband, survived her and is entitled to participate, under the laws of descent and distribution, in the distribution of said residue. In this they are correct. While Josef Legler, Sr., appears to have participated in the contest of the final account in the probate court, he did not join in the appeal to the district court, nor in the appeal to this court. The judgment here appealed from properly awarded him a one-third interest in the residue of said estate, and one-third to each of the appellants. The statement and holding in our original opinion overlooked the fact that Josef Legler, Sr., had not appealed. The opinion and order is therefore corrected accordingly, directing the trial court to make distribution of such residue equally between Frank Legler, Edna Legler, and Josef Legler, Sr. To this ex-tent said motion is granted. Otherwise it is overruled.

Granted in part and in part overruled.

On Appellee's Motion for Rehearing.

Appellee in his motion for rehearing calls our attention to the fact that the total commissions claimed by him and allowed by the probate court was $194.21, instead of $229.25, as stated in our original opinion. In this he is correct and our original opinion is corrected accordingly. The error was due to improper inclusion in the report filed in the probate court of an item of $35.04, which should have been excluded. This correction, however, does not affect the conclusions reached nor the disposition of the appeal.

It is also urged for the first time that the finding of the trial court that "the Guardian is indebted to the estate of his ward in the sum of $668.46," less authorized deductions, was erroneous to the extent of $200, and should have been $468.46. This error, if it were an error, was not called to the trial court's attention, no opportunity given that court to correct it, no complaint by cross-assignment or otherwise made by appellee either in the trial court or on this appeal. We have not undertaken to recapitulate the entire account, as corrected and filed in the district court, to determine the exact amount due the surviving heirs of Augusta Legler, but have accepted the findings of the trial court, except as to the commissions disallowed by the district court.

█ If, however, such finding was incorrect, and the final account properly recapitulated so shows, the trial court is authorized, upon this reversal, and before certifying its judgment to the probate court, to correct its former findings so as to fix and determine the true residue of such estate for distribution.

To this extent said motion is granted. Otherwise it is overruled.

Granted in part and in part overruled.