Jean J. CARNEY, Appellant,

v.

Elma AICKLEN, Appellee.

No. 1271.

Court of Civil Appeals of Texas,
Tyler.

Aug. 30, 1979.

Rehearing Denied Oct. 4, 1979.

Byron Lockhart, Lockhart, Kuykendall & Jones, Austin, Leonard J. Gittinger, Jr., Gittinger & Gittinger, San Antonio, for appellant.

Joseph Latting, Robinson, Felts, Meyers, Starnes & Latting, Judith P. Abbott, Austin, for appellee.

MOORE, Justice.

This is the second appeal from an order appointing a guardian of the person and estate of Elma H. Loud, a person of unsound mind. The litigation originally commenced when appellant, Jean J. Carney, filed an application to be appointed as guardian. Appellee, Elma Aicklen, contested the application of Jean J. Carney and also filed an application seeking to be appointed guardian of the person and estate of Elma H. Loud. At the conclusion of the trial in the previous case Elma Aicklen was appointed guardian. Upon appeal in the previous case the Austin Court of Civil Appeals reversed the case on the ground that Elma Aicklen was disqualified to serve as guardian due to the fact that the evidence showed that she was indebted to the estate of her ward. *Carney v. Aicklen,* 552 S.W.2d 633 (Tex.Civ.App.—Austin 1977, no writ). The court, after having found that the evidence was insufficient to show the amount of the indebtedness, remanded the cause for a new trial. Thereafter the cause was again tried.

The second trial, which forms the basis of the present appeal, was before the court and jury. Pursuant to the jury's verdict, the trial court entered an order on March 19, 1978, again appointing Elma Aicklen as guardian of the person and the estate of Mrs. Loud, but conditioned the appointment on appellee's reimbursing the estate in the amount of $1,400.00 covering her indebtedness to the estate. After such amount had been paid, appellee duly qualified as guardian, and appellant, Jean J. Carney, perfected this appeal.

We reform and affirm.

The evidence shows that Mrs. Loud is a widow who was seventy-seven years of age at the time of trial, her husband having died in 1973. She owns a home in Austin, Texas, where she has resided for many years. Appellee, Elma Aicklen, also resides in Austin, Texas. Appellant, Jean J. Carney, resides in San Antonio, Texas. For several years Mrs. Aicklen has taken care of Mrs. Loud on a daily basis, especially after her mental condition commenced deteriorating. Mrs. Carney visited with Mrs. Loud occasionally and Mrs. Loud occasionally would visit Mrs. Carney in her home in San Antonio. The evidence shows that Mrs. Loud reared both appellant and appellee, and they were generally known in the community as her daughters, although actually they were Mrs. Loud's nieces. In 1974 Mrs. Loud executed a general power of attorney to Elma Aicklen who wrote checks on her account to pay her bills and also took care of most of her other household affairs. The bulk of Mrs. Loud's estate valued at between $1,250,000.00 and $1,500,000.00 was in a trust which was being administered by

the American National Bank of Austin, Texas. The trust estate generates an income of between $50,000.00 and $65,000.00 per year. In addition to the trust estate, Mrs. Loud owns her home which had an estimated value at the time of trial of approximately $115,000.00. Other than the interest income from the trust, the home is the principal asset subject to administration by the guardian.

In 1963 Mrs. Loud executed her last will and testament. Under the terms of the will her estate was to be divided in equal shares: one-third to appellee, one-third to appellant, and the remaining one-third to appellee's children. Mrs. Loud willed her home to appellee, Elma Aicklen. Under the terms of the will, however, appellee is required to reimburse the estate for the current value of the home upon the death of Mrs. Loud.

The evidence shows that prior to June 6, 1976, Mrs. Loud lived in her home. On that date she was hospitalized because of her reoccurring mental problems and she has continuously remained in the hospital since that time. According to the testimony of her physician, she was mentally incompetent on that date. He testified that her mental condition was permanent and irreversible. It is conceded by both parties that from and after that time her mental condition was irreversible so that the will which she executed in 1963 is irrevocable.

In response to the special issues submitted by the court in the present case, the jury found that (1) Mrs. Loud was a person of unsound mind; (2) under the circumstances and considering only the best interest of Mrs. Loud, appellee, Elma Aicklen, should be appointed guardian; and (3) the amount of the debt which was owed by appellee, Elma Aicklen, to the estate of Mrs. Loud amounted to $2,100.00.

By her first point of error, appellant contends that the trial court erred in appointing appellee as guardian because she maintains that the evidence is sufficient to show, as a matter of law, that there is a conflict of pecuniary interest between the appellee and her ward which disqualifies her from being appointed. Appellant argues that since Mrs. Loud had not lived in her home since June 6, 1976, appellee, as guardian, had the duty to sell the home and invest the proceeds in order to obtain income for her estate, and since she failed and refused to do so, she was disqualified to be appointed guardian at the time of the second guardianship proceeding. Appellant further contends that there is a conflict of interest between appellee and her ward because if she determines to sell the house, she injures her rights under the vested expectancy arising from her mother's will, which cannot be revoked. On the other hand, if she protects her vested expectancy, she injures the estate of her ward by depriving the estate of the income from the proceeds of a sale and also by expending approximately $3,600.00 per year in maintenance expense on the house.

Section 110 of Tex.Prob.Code Ann. (Supp. 1978–79) provides:

"The following persons shall not be appointed guardians:

.        .        .        .        .

(e) Those who are indebted to the person for whom or for whose estate a guardian is to be appointed, unless they pay the debt prior to the appointment, or who are asserting any claim to any property, real or personal, adverse to the person for whom, or for whose estate, the appointment is sought.

.        .        .        .        .

(g) Those who by reason of inexperience or lack of education, or for other good reason, are shown to be incapable of properly and prudently managing and controlling the ward or his estate."

The foregoing statute has been interpreted to exclude as guardians those who have a conflict of interest with the ward. *Dobrowolski v. Wyman*, 397 S.W.2d 930 (Tex. Civ.App.—San Antonio 1965, no writ). It has also been said that the statute limits the appointment to those possessed of "disinterestedness from obligations antagonistic to, or conflicting with, financial interests" of the ward. *Penny v. Hampton*, 283 S.W. 599, 600 (Tex.Civ.App.—Texarkana 1926, no writ).

All of which brings us to the question of whether, under the facts before us, the appellee was disqualified, as a matter of law, to be appointed guardian because of her failure or refusal to sell the home of her ward and invest the proceeds. We have concluded that the evidence falls short of establishing her disqualification as a matter of law.

The evidence shows that at the time Mrs. Loud's husband died in 1973, the home had a value of $80,000.00. The evidence further reflects that in September 1977 the home had a fair-market value of $115,000.00. Thus, in less than four and one-half years the value of the home had increased by $35,000.00 due to inflation. While it is by no means certain that the home will increase in value to that extent in the future, there is likewise no certainty that it will not. The evidence clearly indicates that the income from Mrs. Loud's trust estate was sufficient to take care of her needs and therefore there was no necessity to obtain additional income. Under these circumstances, appellee's failure or refusal to sell the home would not, as a matter of law, be sufficient to establish a violation of the Prudent Man Rule so as to demonstrate disloyalty toward her ward. Further, appellee testified that if Mrs. Loud's condition became such that she was completely incapacitated and bedridden, she planned to move her back to her home and employ nurses to take care of her at her home. Certainly the guardian should have some discretion in determining where and how her incompetent ward would be taken care of. This being true, we fail to see how her failure or refusal to sell the home could be classified as imprudent.

We are likewise of the opinion that the evidence falls short of conclusively establishing that a conflict of interest existed between appellee and her ward due to the fact that appellee had an expectancy in the home which was devised to her under the terms of Mrs. Loud's will. Under the terms of the will, Mrs. Loud directed her independent executor to obtain an appraisal of the fair-market value of the home at the time of her death and to deduct such amount from appellee's one-third of the estate so that her estate would be divided in three equal parts.

Appellant takes the position that since Mrs. Loud no longer had the power to revoke or alter the will, appellee had a vested expectancy in the house. Consequently, appellant argues that by failing or refusing to sell the house, appellee was acting to protect her own financial interest at her ward's expense, and as a result, a conflict of interest arose. We are not in accord with this proposition.

While appellee may have an expectancy in the house, the fact that the testatrix required her to reimburse the estate for the market value thereof renders her expectancy of little or no value. In view of the reimbursement provision, appellee could not expect to reap financial gain whatever by keeping the house. Under these circumstances her financial interest was and still is compatible with the financial interest of her ward. Consequently, we fail to perceive how any conflict of financial interest existed.

Nor can we agree with appellant's contention that the expenditure of $3,600.00 per year by the appellee in maintaining the home constitutes conclusive proof of a conflict of interest showing that appellee was expending such funds to protect her expectancy. If, as we have heretofore held, appellee was authorized to keep the home in order to take care of the possible future needs of her ward, it would follow that she owed a duty to her ward to preserve and maintain the property. Appellant's first point is overruled.

Appellant contends by her third point that the trial court erred in appointing appellee as guardian because the evidence shows as a matter of law that she was indebted to the estate of her ward in an amount far in excess of the $2,100.00 as found by the jury. In this connection, the evidence shows that prior to the time Mrs. Loud became incompetent, she made it a practice of giving appellee $350.00 and giv-

ing appellant $175.00 per month. The record shows that after Mrs. Loud became incompetent, appellee continued the same practice for a period of four months paying herself a total of $1,400.00 and paying appellant a total of $700.00. The jury found that the appellee was indebted to Mrs. Loud's estate in the total sum of $2,100.00.

Appellant argues that in addition to the $2,100.00 indebtedness, the evidence shows, as a matter of law, that the appellee is also indebted to the estate for the sum of $5,663.80 for attorney fees which she paid to her attorney out of her ward's estate for representing her in the contest of the prior guardianship proceeding and for representing her on the appeal of the case. Appellant takes the position that appellee's action in contesting the guardianship and in seeking her own appointment was a personal matter and that the attorney fees should have been paid by her and not by the estate. Consequently she argues that the appellee is now indebted to the estate for the amount of the attorney's fees. We find no merit in this contention.

Section 242, Tex.Prob.Code Ann. (1955), provides that a guardian is authorized to pay all reasonable attorney fees necessarily incurred in connection with the proceedings and management of the estate of the ward. Section 28, Tex.Prob.Code Ann. (Supp.1975), provides that "Pending appeals from orders or judgments appointing . . . guardians, . . . the appointees shall continue to act . . . ." The record reveals that at all times after she was appointed guardian in the prior guardianship proceedings, she has continued to act as guardian. On October 31, 1976, she paid her attorney $2,163.80 and on June 8, 1977, she paid him the sum of $3,500.00. Both of such payments were included in her annual report filed on November 17, 1978, which was subsequently approved by the probate court.

■■ The best interest of the ward is served by the appointment of a fit and proper person as guardian. As a result of the contest in the present case, the jury found that the best interest of the ward would be served by the appointment of

appellee. The jury rejected appellant's claim that the interest of the ward would be better served by her appointment. Where an application for guardianship is contested and as a result of the contest the contestant is appointed guardian, a reasonable attorney's fee necessary for that purpose is clearly authorized because such funds are obviously expended for the benefit of the ward and for the protection of the estate. Section 242, Tex.Prob.Code Ann. (1955); *Legler v. Legler*, 189 S.W.2d 505, 510–11 (Tex.Civ.App.—Austin 1945, writ ref'd w. m.).

■ Appellant further argues that the appellee was disqualified from appointment as guardian because she was indebted to the estate for the amount of interest that would have been earned on the proceeds from the sale of the home, as well as the amount expended by her in maintaining the home. Appellant's argument here is premised on the assumption that appellee was duty-bound to sell the home and invest the proceeds. Since we have heretofore concluded that no such duty arose, we find no merit in this contention. Appellant's third point is overruled.

■ Appellant asserts by her fifth point that the trial court erred in reducing the amount of the indebtedness found by the jury to be due and owing to the estate by appellee Elma Aicklen from $2,100.00 to $1,400.00. We sustain appellant's contention.

In response to Special Issue No. 3, the jury found that at the time of trial, appellee owed $2,100.00 to her ward's estate. In connection with Special Issue No. 3, the court instructed the jury as follows:

"You are instructed that a debt arises when one having charge of the financial affairs of another uses funds or property of the other for the benefit of the user or some third party."

The record is unclear as to why the trial court reduced the amount of the verdict. Apparently the trial court concluded that the appellee was indebted to the estate for the monthly payments which she paid her-

self totalling the sum of $1,400.00 but was not indebted to the estate for the monthly payments paid to appellant in the amount of $700.00. In any event, the record shows that the appellee has reimbursed the estate for the sum of $1,400.00.

Appellee undertakes to sustain the trial court's action on the ground that the monthly payments made to herself and appellant were made before she became the guardian of the estate and were made by virtue of the powers conferred on her by the power of attorney executed by Mrs. Loud providing that such powers would not terminate on her disability. Contrary to appellee's contention, we find nothing in the power of attorney authorizing the appellee to expend any of Mrs. Loud's funds for her own use and benefit, nor do we find anything in the appointment authorizing her to make gifts to third persons. Consequently, we do not believe the action of the court may be sustained on the basis of the power of attorney.

Appellee registered no objection to the submission of Special Issue No. 3 or to the instructions given by the court in connection therewith. Under the court's charge and the undisputed evidence, the record shows conclusively that appellee was indebted to her ward's estate not only for the $1,400.00 she paid herself but also for the $700.00 she gave appellant. It therefore became the duty of the trial court to enter judgment on the verdict. Accordingly, the judgment is reformed so as to require appellee to reimburse the estate of her ward in the amount of $2,100.00 rather than the sum of $1,400.00 as decreed by the judgment.

By the sixth point, appellant contends that the trial court erred in denying her application for appointment because she contends the evidence conclusively establishes that she was qualified to be appointed guardian. Consequently, appellant takes the position that this court should reverse and render judgment appointing her guardian. We find no merit in this contention and the point is therefore overruled.

Section 109(c)(3), Tex.Prob.Code Ann. (1955), provides:

"Where two or more persons are equally entitled, the guardianship shall be given to one or the other, according to the circumstances, only the best interest of the ward being considered."

The question as to which of the two applicants was to be appointed as guardian was submitted to the jury by Special Issue No. 2 reading as follows:

"Under the circumstances presently existing, and considering only the best interest of Elma Loud, whom do you find from the preponderance of the evidence should be appointed as the guardian of the person and the estate of Elma Loud?

Thus, the jury was given the right to choose between the two applicants and the jury chose appellee, Elma Aicklen.

Where the question of which of two equally entitled applicants is submitted to the jury under the provisions of Sec. 109(c)(3) of the Texas Probate Code, the issue as to which applicant is better qualified to serve the best interest of the ward creates a question to be determined by the trier of fact. Unless it can be said as a matter of law that there were no pleadings and no evidence of probative force to sustain the jury's findings and the trial court's judgment, this court is not authorized to reverse and render the cause. *McFall v. Fletcher*, 138 Tex. 93, 157 S.W.2d 131, 132 (1941). This situation does not exist here.

In points 2, 4, and 7 appellant seeks a reversal on the ground that the jury's findings and the judgment based thereon is against the overwhelming weight and preponderance of the evidence. After a review of the entire record and after weighing and balancing all of the evidence in the record, both that in favor of the findings and judgment as well as that contrary thereto, we have concluded that there is no merit in any of these points and they are therefore overruled.

The judgment will be reformed so as to order appellee, Elma Aicklen, to pay into the registry of the court for the use and benefit of the estate of Elma Loud, the sum

of $2,100.00 rather than the $1,400.00 as decreed by the judgment. In all other respects the judgment is affirmed.